In re Michael DIGERONIMO, Debtor.

Michael DiGeronimo, Plaintiff,

v.

Michelle Weissberg and Mitchell
N. Kay, Esq., Defendants.

Bankruptcy No. 800–80214–511.

Adversary No. 801–8379–511.

United States Bankruptcy Court,
E.D. New York.

Nov. 9, 2006.

Pryor & Mandelup, L.L.P., By A. Scott Mandelup, Esq., Westbury, NY, for Defendants, Michelle Weissberg and Mitchell Kay.

David J. Weiss, Esq., Mineola, NY, for Plaintiff, Michael DiGeronimo.

## MEMORANDUM DECISION (Re: Defendants' Motion to Vacate Order Granting Summary Judgment)

MELANIE L. CYGANOWSKI, Bankruptcy Judge.

Before the Court is the Defendants' motion to vacate and reconsider the Order and Judgment, entered on June 24, 2002 (the "Order"), which granted summary judgment in favor of the Plaintiff–Debtor. For the reasons that follow, the Court grants the Defendants' motion to vacate and reconsider the Order but, upon reconsideration, the Court finds that the Debtor's motion for summary judgment should be granted as originally determined. Accordingly, the Court declines to modify its Order and Judgment as entered previously.

## BACKGROUND

Prior to filing a voluntary Chapter 7 bankruptcy petition on January 11, 2000, Michael DiGeronimo (the "Debtor" or "Plaintiff") was involved in a divorce action in New York State Court with his then-estranged spouse, Michelle Weissberg ("Weissberg"). Weissberg was represented in the divorce action by Mitchell N. Kay, Esq. ("Kay"). When the Debtor filed his petition, he listed both Weissberg and Kay as creditors because of potential claims relating to the matrimonial proceeding. Shortly after the bankruptcy petition was filed, a meeting of creditors was held pursuant to § 341 of the Bankruptcy Code,[1] and the Chapter 7 trustee filed a report of no assets. While the bankruptcy case was yet pending, Weissberg timely filed a complaint under § 523(a) to determine the dischargeability of certain child support debts. (See Adv. Proc. No. 800–8099–511). That adversary proceeding was resolved by stipulation and closed. Thereafter, the Debtor received an Order of Discharge on June 9, 2000 (the "Discharge Order") and the bankruptcy case was closed on July 10, 2000.

Almost one year later, on June 18, 2001, the Debtor moved to re-open the bankruptcy case in order to file an adversary proceeding against Weissberg alleging that she violated the discharge injunction that issued pursuant to Section 524. That motion was granted, and on October 25, 2001, the Debtor sued Weissberg and Kay (together, Weissberg and Kay are referred to herein as the "Defendants") pursuant to §§ 105 and 524 "to recover actual damages, punitive damages and reasonable attorney's fees in connection with willful and

---

**1.** Unless otherwise noted, all references to statutes are found in the Bankruptcy Code, 11 U.S.C. §§ 1, *et seq.* The BAPCPA amendments do not apply to this case.

malicious violations ... of the Discharge Order issued in this case." (Complaint ¶ 1). The Debtor asserts that as of the date he filed for bankruptcy, Weissberg had two types of claims against him:

1. a claim for child support and related attorneys' fees, which were the subject of two pre-petition judgments, specifically, (a) a judgment for $8,119.72 for child support, and (b) a judgment for $4,100 for her attorneys' fees related to establishing the Debtor's child support obligation; and

2. claims for equitable distribution pursuant to New York law.

The first type of claim outlined above—for child support obligations and related attorneys' fees—was the subject of Weissberg's prior adversary proceeding against the Debtor. The parties stipulated that these obligations were non-dischargeable and they are not the subject of this dispute. Rather, the controversy here relates to the second type of claim noted above. In particular, the Debtor alleges that Weissberg's claims for equitable distribution were a "property settlement" which was discharged by the Discharge Order. The Debtor alleges that despite the discharge, at a state court inquest held on October 3, 2000, the Defendants continued to pursue the equitable distribution claims against him. (Complaint ¶ 17). On April 5, 2001 (well after the Discharge Order which was entered almost one year before), the state court entered a Judgment of Divorce which required the Debtor to transfer a total of $13,667.22 to Weissberg as part of the so-called "property settlement" claims. (Complaint ¶ 18). Moreover, the Debtor argues that despite having filed his motion on June 18, 2001 to reopen the bankruptcy case to determine that his debts to Weissberg were discharged, the Defendants moved in state court by Order to Show Cause, dated June 20, 2001, to hold the Debtor in contempt for failing to comply with the property settlement provisions of the Judgment of Divorce. (Complaint ¶ 20).

In its sole cause of action, the Complaint alleges that, for all these reasons, the Defendants willfully violated the discharge injunction when they continued to pursue Weissberg's equitable distribution claims against the Debtor in state court. The Debtor argues that it is incumbent upon a creditor to file an adversary proceeding to determine the non-dischargeability of equitable distribution claims under § 523(a)(15), and absent the filing of a timely complaint by a creditor claiming such non-dischargeability under § 523(a)(15), that creditor's claim is discharged. Because Weissberg failed to seek this relief, the Debtor argues that the Defendants' continued pursuit of those claims in state court was a willful violation of the discharge injunction of § 524(a)(2).

Kay, representing himself and Weissberg, filed an Amended Answer on November 28, 2001. The Amended Answer, which is essentially a general denial, asserts seven affirmative defenses: (1) the Debtor waived his right to assert the discharge as a defense because he failed to raise it as a defense at the October 3, 2000 inquest; (2) a portion of the claim which the Debtor seeks to have discharged is in the nature of child support; (3) a portion of the claim which the Debtor seeks to have discharged is in the nature of jointly-held property; (4) a portion of the claim which the Debtor seeks to have discharged "were [sic] occasioned by the fraud" of the Debtor; (5) a portion of the claim which the Debtor seeks to have discharged was occasioned by the wrongful conversion and misappropriation of Weissberg's funds; (6) the Debtor failed to timely appeal the Judgment of Divorce which incorporated some of the claims which the Debtor seeks

to have discharged; and (7) Kay is entitled to qualified immunity.

### The Motion for Summary Judgment

On April 15, 2002, the Debtor filed a motion for summary judgment asking the Court to find, as a matter of law, that the Defendants violated the discharge injunction and should be held jointly and severally liable for $1,165 in actual damages, $6,635 in attorney's fees, and punitive damages to be determined by the Court. According to the Debtor, because he was aware of certain claims asserted against him by the Defendants in the divorce action (which was pending at the time that he filed his bankruptcy petition),[2] he listed both of them as creditors in his bankruptcy petition. As creditors listed in the petition, it is undisputed that both Defendants received notice of all pertinent details concerning the Debtor's bankruptcy case: the filing of the petition, the creditors meeting, deadlines for filing complaints to determine the non-dischargeability of debts and/or to object to discharge, and, ultimately, the Discharge Order itself.[3] The Debtor argues that because Weissberg failed to seek a determination under § 523 that the obligations created in the matrimonial action should be declared non-dischargeable, those claims were discharged by operation of law pursuant to § 523(c)(1). The Debtor further contends that the Judgment of Divorce did not create debts in the nature of "alimony, maintenance or support," but rather that Weissberg's claims are dischargeable property settlements. (Motion ¶ 14).

A hearing on the summary judgment motion originally was scheduled for May 8, 2002, but was adjourned to June 5, 2002 at the express request of Defendants' counsel. Despite the fact that the motion had been pending since April 15th, counsel for the Defendants failed to file written opposition prior to the hearing. Instead, counsel handed up his written opposition at the hearing on June 5th, just as oral argument was commencing. Kay apologized for the delay in filing his papers and explained that he had just concluded a three-and-a-half week trial in Supreme Court in Nassau County. (Transcript of June 5, 2002 hearing ("Tr.") at 3, 4).

The Court declined to consider the Defendants' late-filed opposition and granted the motion for summary judgment "on the grounds that there was no opposition, that there are no material issues of fact that have been raised, because nothing was filed." (Tr. at 6); *see* Fed.R.Civ.P. 56(e). The Court further stated that it was "inexcusable" for a party to present opposing papers on the date of the hearing—especially one noticed almost two months prior and one that was adjourned for a month at the Defendants' request—since neither the Court nor the Plaintiff had been given any opportunity to review the papers, much less respond to them in any meaningful way. Further, the Court shared its disappointment that Kay had also failed to advise Plaintiff's counsel that he was intending to appear at the hearing, much less argue and present opposition on behalf of the Defendants.

---

**2.** Although the divorce action was pending at the time that the Debtor filed his bankruptcy petition, no judgment had been entered by the State Court as of that date.

**3.** Schedule E to the Petition lists Kay as holding an unsecured priority claim, but does not state an amount, the date the claim was incurred, or the amount entitled to priority. Schedule E also lists a debt to "Michael"

Weissberg in the amount of $8,100. In addition, Schedule F lists Michelle Weissberg as a general unsecured creditor with a claim for legal fees dating back to 1999 in the amount of $3,130. The Statement of Financial Affairs lists the matrimonial action, *DiGeronimo v. Weissberg*, pending in state court as well as a judgment that was entered in favor of Weissberg in a paternity/support action, *Weissberg v. DiGeronimo*.

On June 24, 2002, an order and judgment were entered awarding the Debtor judgment against the Defendants, jointly and severally, in the amount of $33,700, which sum includes $1,165 in actual damages, $6,635 in attorney's fees and costs, and punitive damages of $23,400 (three times actual damages and fees).

### The Motion to Vacate

Moving by Order to Show Cause, on June 28, 2002, the Defendants ask this Court to vacate the judgment pursuant to Fed.R.Civ.P. 55(c) (set aside default), Fed. R.Civ.P. 60(b) (relief from judgment), Fed. R.Civ.P. 59(e) (alter/amend judgment), and Fed.R.Civ.P. 62(b) (stay of execution pending decision).[4] The Defendants argue that "to allow said Order and Judgment to stand would be to perpetuate manifest error and to ignore the Defendants' legally meritorious defenses which would preclude the substantive relief sought by Plaintiff in his Motion for Summary Judgment." (Motion to Vacate ¶ 3). They further argue that "upon this Court's review of the facts and law applicable to the instant motion, this Court will conclude that Plaintiff's Motion for Summary Judgment was wholly without merit and must be denied."[5] (Motion to Vacate ¶ 4).

On the merits of the claims asserted in the Complaint, the Defendants argue that the state court had concurrent jurisdiction with the Bankruptcy Court to determine the non-dischargeability of the obligations under 11 U.S.C. § 523(a)(5), and that by entering the Judgment of Divorce post-discharge, the state court found (by implication) that the debts were not discharged

by the Debtor's bankruptcy. The Defendants further argue because the Debtor failed to assert the bankruptcy discharge as a defense in the divorce action, he waived his right to seek to enforce the discharge against Weissberg now. As a result, Defendants contend that the doctrines of *res judicata* and *Rooker–Feldman* preclude the Debtor from arguing that the debt was discharged. The Defendants also argue that punitive damages are improper in these contempt proceedings. Finally, the Defendants request a stay of enforcement of any judgment pending the outcome of the Motion to Vacate.

In his opposition to the Motion to Vacate, the Debtor argues that the Defendants have not shown "excusable neglect," nor have the Defendants pointed to any mistake of law or any fact that the Court overlooked. Responding to the substance of the Defendants' arguments, the Debtor argues that the claims sought to be enforced by Weissberg were in the nature of property settlements and not claims in the nature of "alimony maintenance and support." As a result, the Debtor argues that the dischargeability provision that applies is 11 U.S.C. § 523(a)(15), and not § 523(a)(5). For this reason, the Debtor argues that the Bankruptcy Court has exclusive jurisdiction to (i) decide the non-dischargeability of debts under 11 U.S.C. § 523(a)(15), and (ii) enforce any violations of the discharge injunction. The Debtor also argues that because Bankruptcy Courts have exclusive jurisdiction to determine non-dischargeability under 11 U.S.C. § 523(a)(15), the doctrines of *res judicata* and *Rooker–Feldman* do not apply. Fur-

---

**4.** The Defendants' motion will be referred to simply as the "Motion to Vacate." On or about June 20, 2002 (after oral argument but before the Order and Judgment were entered), the law firm of Pryor & Mandelup LLP was substituted as counsel of record for the Defendants in lieu of Kay who had represented Weissberg and himself *pro se.*

**5.** In support of the Motion to Vacate, the Defendants filed a Memorandum of Law, an Affirmation of A. Scott Mandelup, Esq., an Affidavit of Mitchell Kay, and a Statement of Material Facts as to which it is contended there exists a genuine issue to be tried.

ther, the Debtor urges that because the Defendants did not raise *res judicata* as an affirmative defense in their answer, they cannot raise the argument now. *See* Fed. R.Civ.P. 8(c); Fed. R. Bankr.P. 7008. Finally, the Debtor argues that Weissberg has no standing to assert these claims against the Debtor because she failed to list the claims as an asset in a bankruptcy case she filed in 1998.

In reply, the Defendants admit that if the obligations created by the Judgment of Divorce were property settlements, then they were discharged in bankruptcy. (Reply ¶ 3). Although the Judgment of Divorce does not explicitly state that the amounts due are non-dischargeable, the Defendants argue that to interpret it any other way would be "self-contradictory and without internal logic." (Reply ¶ 5). Thus, the Defendants pose the question:

> Why would the state court Judge go through the process of determining the amounts to which Weissberg was entitled, if it were to conclude that such amounts had already been discharged in bankruptcy. Such an analysis of the Judgment is ludicrous.

Reply ¶ 5. The Defendants further admit that "there is absolutely no dispute that the Judgment of Divorce did not create findings under Federal Bankruptcy law and 11 U.S.C. Section 523(a)(5)." (Reply ¶ 10). Rather, they argue that "[i]f there existed any basis at the time Defendants sought to enforce the Judgment, (it is submitted there existed a substantial basis) under which the Judgment of Divorce created non-dischargeable obligations, then by definition, Defendants cannot be held in contempt." (Reply ¶ 10). As for their failure to raise *res judicata* as an affirmative defense, the Defendants argue that the Debtor's waiver of the right to discharge was raised in their answer and "proof of this affirmative defense at trial would establish the applicability of the doctrine of *res judicata.*" (Reply ¶ 11). By raising the "waiver" defense, Defendants argue, they "clearly apprised this Court that the issue of discharge was inextricably interconnected with the state court proceeding, that it was not raised therein, and was therefore waived." (Reply ¶ 11).

### DEFENDANTS' MOTION TO VACATE

Because the Court granted the Motion for Summary Judgment without considering the content or merits of the Defendants' opposition, it is appropriate to analyze the Motion to Vacate as one to vacate a default judgment under Rules 55(c) and 60(b). Federal Rule of Civil Procedure 55(c) [6] provides that "[f]or good cause shown, the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." Here, because a judgment was entered granting the summary judgment motion and granting the relief sought in the Complaint, we proceed with an analysis under Rule 60(b).

Rule 60(b)(1) of the Federal Rules of Civil Procedure [7] provides, in relevant part:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect ...

In general, a motion to vacate a default judgment is addressed to the sound discretion of the court. *See Brien v. Kullman Industries, Inc.,* 71 F.3d 1073, 1077 (2d Cir.1995). In considering a motion to va-

---

**6.** Fed R. Civ. P. 55 is made applicable to bankruptcy proceedings by Fed. R. Bankr.P. 7055.

**7.** With certain exceptions not relevant here, Fed R. Civ. P. 60 is made applicable to bankruptcy proceedings by Fed. R. Bankr.P. 9024.

cate a default judgment pursuant to Rule 60(b)(1), "courts have gone beyond the bare wording of the rule and established certain criteria which should be considered in deciding whether the designated standards have been satisfied." *Id.* In this Circuit, courts consider the following criteria: (1) whether the default was willful; (2) whether the defendant has a meritorious defense; and (3) the level of prejudice that may occur to the non-defaulting party if relief is granted. *Id; see also American Alliance Ins. Co., Ltd. v. Eagle Ins. Co.,* 92 F.3d 57, 59 (2d Cir.1996). The term "willful" in the context of a default refers to conduct that is more than merely negligent or careless. *See American Alliance,* 92 F.3d at 61 (default due to filing mistake by defendant's in-house counsel's clerk determined not to be willful). In order to make a sufficient showing of a meritorious defense in connection with a motion to vacate a default judgment, the defendant need not establish his defense conclusively, but he must present evidence of facts that, "if proven at trial, would constitute a complete defense." *S.E.C. v. McNulty,* 137 F.3d 732, 740 (2d Cir.1998) (*quoting Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 98 (2d Cir.1993)).

▮ Because defaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party. Likewise, the criteria of Rule 60(b) should be construed generously in favor of the defaulting party. *See American Alliance,* 92 F.3d at 58 (finding " 'excusable neglect' to be construed generously in the context of an attempt to vacate a default judgment"); *see also Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 96 (2d Cir.1993).

▮ Upon consideration of the elements, this Court first concludes that the default by the Defendants was willful.

The Defendants were well aware of the adjourned date of the hearing, having requested the adjournment in the first instance. Both the local rules of this Court and the rules of federal practice require that opposition be in writing and served and filed at least three days prior to the hearing. *See* E.D.N.Y. LBR 9006–1(a). As a skilled practitioner, Weissberg should have been aware of this requirement and, if not, his failure was inexcusable.

The second factor is more problematic: for the reasons set forth *infra,* the Court does not believe that the Defendants have presented a meritorious defense. Nonetheless, the Court recognizes that this is a complex area of law as to which there are conflicting precedential rulings. For this reason, the Court cannot find that the Defendants failed to present a meritorious defense. Finally, with respect to the third prong, the Court declines to hold that the Debtor has suffered undue prejudice because of the default. The Defendants moved swiftly to vacate the default and to seek reconsideration. While the Debtor would obviously prefer a determination that simply upholds the Court's decision, that is not a sufficient basis to decline to consider the Defendants' motion. This is all the more true in view of the Second Circuit's preference for resolving disputes on the merits. *See, e.g., Enron Oil,* 10 F.3d at 96.

For these reasons, then, the Court grants that part of the Defendants' Motion seeking to vacate the Order and Judgment which had granted summary judgment in favor of the Debtor. Accordingly, the Court will re-examine the motion for summary judgment in light of the Defendants' opposition.

### *PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT*

In the motion for summary judgment, the Plaintiff–Debtor asks this Court to find

as a matter of law that the Defendants should be found in contempt for willfully violating the injunction that arises pursuant to 11 U.S.C. § 524 by attempting to collect a pre-petition discharged debt. In support of the Debtor's assertion that the debt to Weissberg was discharged, the Debtor's counsel [8] cites the following material facts as to which he believes there is no genuine issue to be tried:

- Weissberg had pre-petition claims against Debtor in the nature of equitable distribution (¶ 9);
- By Judgment of Divorce dated April 5, 2001 in the Matrimonial Proceeding, Defendants "caused" the State Court to enter a Judgment which required the Debtor to, among other things, transfer sums totaling more than $13,667.22 to Weissberg in connection with her pre-petition claims for equitable distribution (¶ 11); and
- *After* they received his Motion to Reopen the bankruptcy case, Defendants moved, by Order to Show Cause dated June 20, 2001, to have Plaintiff fined and/or imprisoned for failing to comply with that part of the Judgment of Divorce which required him to transfer sums totaling more than $13,667.22 representing pre-petition property settlement claims to Defendant Weissberg.

In her original opposition to the motion, Weissberg argued, in essence, that the Debtor intentionally omitted his obligations to her from his schedules and therefore the debts were not discharged. (*See* Affidavit of Michelle Weissberg in Opposition to Plaintiff's Motion for Summary Judgment, sworn to on June 2, 2002, ¶¶ 8, 9).

In his opposition, Kay adopts Weissberg's position and also argues that the "issue of plaintiff's discharge in bankruptcy was thoroughly considered by Justice Oliver in response to plaintiff's attorney's position that all obligations due to Ms. Weissberg were discharged, notwithstanding that he failed to specified [sic] them on the Schedules annexed to his bankruptcy petition." [9] (*See* Affidavit of Mitchell Kay

---

8. In his Affidavit in opposition to the motion for summary judgment, Kay correctly points out that the Debtor did not submit his own affidavit in support of the motion and that all factual bases for the motion were submitted in the form of an affirmation by Debtor's counsel. Whether this is alone sufficient to deny the motion, it does not preclude the Court from undertaking an independent analysis of the issues on the merits. This is particularly so when the material facts, as here, are not in dispute and are reflected in the record.

9. Kay attaches a copy of his memorandum of law submitted to the state court. The memorandum focuses on the Debtor's failure to schedule his obligations to Weissberg as grounds for non-dischargeability under Section 523(a)(3). In that memo, Kay also notes that even if the Debtor had scheduled his obligations to Weissberg, the Bankruptcy Court has jurisdiction to determine dischargeability under Section 523(a)(15). Although he says that Justice Oliver "thoroughly considered" issues of non-dischargeability, Kay does not provide the Court with any finding by the state court that the debt to Weissberg was not discharged; nor could the Court find reference to non-dischargeability in the Judgment of Divorce.

For the reasons set forth *infra*, the Defendant's argument is wrong in several respects. First, where, as here, debts owing to a party are scheduled in a petition (even if scheduled erroneously in amount) and where a party has actual notice and knowledge of the bankruptcy case, Section 523(a)(3) does not apply. Secondly, the State Court lacks jurisdiction to determine whether a debt is non-dischargeable under Section 523(a)(15) as that relief is exclusive to the Bankruptcy Court and is time-sensitive in that such relief must be brought within 60 days of the Section 341 meeting of creditors. *See* Fed. R. Bankr.P. 4007(c); 11 U.S.C. § 523(c). In the absence

in Opposition to Plaintiff's Motion for Summary Judgment, sworn to on June 4, 2002, ¶ 5). Kay also argues that the Debtor did not raise the bankruptcy discharge as a defense to Weissberg's requests for relief, and that the Debtor failed to timely appeal the Judgment of Divorce. (Kay Affidavit ¶ 6). Finally, Kay argues that the provision of the Judgment of Divorce which expressly provides that no maintenance was awarded does not mean that the obligations created in the Judgment were property settlements. (Kay Affidavit ¶ 8).

The Defendants did not, at the time of their original opposition, submit a separate statement of material facts as to which they contend that there exists a genuine issue to be tried. *See* E.D.N.Y. LBR 7056–1. However, in support of their Motion to Vacate the order granting summary judgment, the Defendants submitted a statement contending that there were three material issues of fact to be determined at trial: (1) whether the relief granted in the Judgment of Divorce constitutes a "property settlement" or is in the nature of "alimony maintenance or support"; (2) whether the Defendants' enforcement of the Judgment of Divorce constitutes a violation of the discharge injunction; and (3) whether the time to seek a determination of non-dischargeability has

expired. Although the Defendants characterize the first issue as a "fact" issue, they also "contend that as a matter of law [the judgment] is nondischargeable as alimony, maintenance or support." Similarly, although the third issue is also characterized as a "fact" issue, the Defendants argue that there is no time limit within which to commence a Section 523(a)(5) action (a legal issue) and that the matter has been resolved under principles of *Rooker–Feldman* and *res judicata* by virtue of the entry of the Judgment of Divorce post-discharge (both of which are also issues of law). *See In re Scott,* 244 B.R. 885 (Bankr.E.D.Mich.1999); *In re Beardslee,* 209 B.R. 1004 (Bankr.D.Kan.1997); *In re Read,* 183 B.R. 107 (Bankr.E.D.La.1995).

## *DISCUSSION*

The Complaint seeks a determination of contempt against the Defendants for violation of the discharge injunction. Necessary to a finding of contempt, however, is a finding that the Debtor's obligations to Weissberg were discharged under Bankruptcy Code Section 727, and that is where the Court begins. Section 727(b) provides that "[e]xcept as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief ...." [10] Therefore, when

---

of timely commencing a proceeding seeking relief under Section 523(a)(15), the claim is time-barred. Third, determination of non-dischargeability of a debt requires consideration by a court of the underlying bankruptcy law provisions. The mere fact that a court determines, in the context of a matrimonial proceeding, that a debt is owing is not equivalent to a determination that the debt is or is not dischargeable by reason of a prior bankruptcy proceeding within which the party received an Order of Discharge.

**10.** Section 727(b) also discharges "any liability on a claim that is determined under section 502 of this title as if such claim had arisen before the commencement of the case, ... whether or not a claim based on any such

debt or liability is allowed under section 502 of this title." 11 U.S.C. § 727(b). Relevant to this discussion, Section 502(b)(5) provides that if an objection to a claim is made, the court "shall determine the amount of such claim ... as of the date of the filing of the petition, and shall allow such claim in such amount except to the extent that ... such claim is for a debt that is unmatured on the date of the filing of the petition and that is excepted from discharge under section 523(a)(5) of this title ...." 11 U.S.C. § 502(b)(5). The legislative history of this provision shows that Congress intended that post-petition alimony, maintenance or support claims "are to be paid from the debtor's post-petition property, because the claims are nondischargeable." H.R.Rep. No. 595, 95th

broken down into its relevant component parts, Section 727 discharges debts that (i) arose pre-petition, and (ii) are not non-dischargeable under Section 523.

Although it appears that the Defendants concede that the Debtor's obligations to Weissberg and Kay arise pre-petition, the Court will analyze both elements in turn.

*Did the debt to Weissberg arise pre-petition?*

■ The Bankruptcy Code defines a "debt" as "liability on a claim." 11 U.S.C. § 101(12). A "claim" is defined as a

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmated,

disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5).

Although neither party raises the issues, the Court first addresses whether a matrimonial debt created by judgment entered post-petition is a "debt that arose before the date of the order for relief," and therefore not subject to discharge. *See* 11 U.S.C. § 727(b). There are a number of courts (all of which, for the most part, sit outside of New York State) which hold that a divorce judgment entered post-petition creates a post-petition debt not subject to the discharge. *See, e.g., In re Arleaux*, 229 B.R. 182 (8th Cir. BAP 1999) (explaining that debtor's "debt to his former spouse arising from the dissolution decree entered after he filed his bankruptcy petition is new post-petition debt and as such is not subject to his discharge").[11]

There is also, however, a line of cases (applying New York law) which hold to the contrary. For example, in the case of *In re Anjum*, 288 B.R. 72, 76 (Bankr.S.D.N.Y. 2003), Judge Adlai S. Hardin found that:

Cong., 1st Sess. 352–54 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 62–65 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6309, 5787, 5849, *reprinted in* Norton Bankruptcy Rules Pamphlet 1997–1998 Edition, 398.

11. *See also In re Miller*, 268 B.R. 826 (Bankr. N.D.Ind.2001) ("Recognizing that whether or not a particular obligation is contingent can 'hinge on the nature of the claim and the posture of the case,'" the court found that obligation to ex-spouse does not arise until the state court enters an order determining property rights); *In re Miller*, 246 B.R. 559 (Bankr.E.D.Tenn.2000) (noting that "Courts have consistently held that a debtor's obligation to a former spouse under a post-petition divorce decree or settlement constitutes a post-petition debt and is not dischargeable under § 727(b)"); *In re Berlingeri*, 246 B.R. 196 (Bankr.D.N.J.2000) (finding that a "claim for equitable distribution did not arise until

the judgment of divorce was granted ... [and therefore] claims constitute a non-dischargeable post-petition obligation"); *In re Compagnone*, 239 B.R. 841 (Bankr.D.Mass.1999) (finding that estranged wife did not have a "right to payment" until the family court issued an order creating such a right); *In re Antonino*, 241 B.R. 883 (Bankr.N.D.Ill.1999) (finding that debt to ex-spouse arising out of a settlement agreement entered into post-petition was a post-petition obligation not subject to discharge); *Scholl v. Scholl (In re Scholl)*, 234 B.R. 636 (Bankr.E.D.Pa.1999) (finding that commencement of divorce proceeding by debtor's spouse did not give rise to any "right to payment" or any pre-petition debt which could be discharged in bankruptcy); *In re Perry*, 131 B.R. 763, 766–67 (Bankr.D.Mass. 1991) (finding ex-spouse's contingent rights to property did not constitute a "claim" against debtor, but imposed constructive trust upon certain property in favor of ex-spouse which was not avoidable under Section 544).

[A] divorce judgment results only in a pre-petition, unsecured monetary claim on the part of the former spouse entitled to share ratably in the debtor's estate with other unsecured claims. It matters not whether the divorce judgment was based upon an agreement between the spouses entered into before the bankruptcy filing, or upon an agreement made after the bankruptcy filing, or upon the decision of a matrimonial court without any agreement of the parties.... This analysis is consistent with the case law. The courts have uniformly held that when a final judgment of divorce has not been entered at the time of a bankruptcy filing, the non-debtor spouse's rights may be no greater than that of a general unsecured creditor.

 Under New York law, one spouse's rights in marital property owned by the other are inchoate and do not vest until entry of a judgment of divorce. *In re Cole*, 202 B.R. 356, 360 (Bankr.S.D.N.Y. 1996). The result is that a non-debtor spouse does not have a recognizable *property interest* in a debtor's property until entry of the divorce judgment. The debtor's property comes into the bankruptcy estate free from the spouse's inchoate interest, and the spouse has a claim to the debtor's property to the same extent as does any other unsecured creditor. If the divorce judgment is not entered pre-petition, the trustee's rights as a hypothetical lien creditor cut off the spouse's rights to the debtor's property and the spouse is left with a claim against the estate which is discharged unless it is declared non-dischargeable under 11 U.S.C. §§ 523(a)(5) or (15).

In the decision of *In re Cole*, 202 B.R. 356, 360 (Bankr.S.D.N.Y.1996), Chief Judge Stuart M. Bernstein explains that "[i]f bankruptcy intervenes before the state court enters the judgment, the trustee's status as a hypothetical lien creditor cuts off the non-debtor spouse's inchoate rights in marital property ..., and leaves her with a general unsecured claim." *Cole*, 202 B.R. at 360 (citations omitted).[12] On the other hand, where a divorce decree is entered pre-petition which declares an award of equitable distribution and transfers title to the non-debtor spouse, the property does not become property of the debtor spouse's estate. *See In re Greenwald*, 134 B.R. 729, 731 (Bankr.S.D.N.Y. 1991) (analyzing cases but finding that award entered pre-petition and spouse's interest did not become property of the estate).[13]

---

**12.** *See also In re Lefrak*, 223 B.R. 431, 439 (Bankr.S.D.N.Y.1998) (same); *In re Polliard*, 152 B.R. 51, 54–55 (Bankr.W.D.Pa.1993) (finding spouse's claim for equitable distribution shares pro rata with other unsecured creditors); *In re Price*, 154 B.R. 344, 346 (Bankr.N.D.Fla.1993) (same); *In re Vann*, 113 B.R. 704, 706 (Bankr.D.Colo.1990) (finding that until dissolution proceeding commenced and spouse takes action to perfect her interest her interest is subordinate to judgment lien creditor); *Hoffman v. Hoffman*, 157 B.R. 580, 583 (E.D.N.C.1992), *aff'd*, 998 F.2d 1009, 1993 WL 280359 (4th Cir.1993) (finding that spouse's right to equitable distribution is a claim subject to discharge); *In re Palmer*, 78 B.R. 402, 406 (Bankr.E.D.N.Y.1987) (finding that "[s]ince no equitable distribution award had vested at the time of the filing of the petition, the debtor's property came into the estate free of the claims of the spouse").

**13.** There is another line of cases which takes this issue one step further and finds that, although the spouse's interest in the debtor's property did not vest pre-petition, there may be circumstances where it is appropriate to impose a constructive trust against the debtor's property in favor of the non-debtor spouse. *See, e.g., Davis v. Cox*, 356 F.3d 76 (1st Cir.2004), in which the First Circuit held that where a divorce proceeding was commenced pre-petition, but the state court order dividing marital property was entered post-petition, the debtor's spouse held a constructive trust against a certain IRA account held in the debtor's name such that the IRA did not become property of the estate upon the

This Court declines to follow those cases which hold that a divorce judgment entered post-petition creates a post-petition debt not subject to the discharge. Rather, this Court agrees with the reasoning in *Anjum* and *Cole* and those other cases which hold that where a divorce action is commenced pre-petition, but the divorce judgment is not entered until after the petition is filed, a debtor's ex-spouse holds but an unsecured claim against the estate.[14] Therefore, the Court finds that Weissberg holds a claim against the estate that arose prior to the time that the debtor filed his bankruptcy petition. The next step in the analysis is whether that claim is non-dischargeable under Section 523.

*Is Weissberg's Claim Non–Dischargeable under Section 523?*

The exceptions to discharge relevant in this case are found in Section 523(a)(5) and (15) which provide, in relevant part, that:

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—

debtor's bankruptcy filing. The *Davis* Court, applying Maine law, found that given the debtor's "contemptuous behavior," it was appropriate to impose a constructive trust in favor of the spouse.

> The *Davis* decision is consistent with the decision in *In re Hilsen*, 119 B.R. 435 (S.D.N.Y.1990). In *Hilsen*, the District Court reversed an order of the bankruptcy court which held that because a judgment of divorce was entered post-petition, the debtor's spouse had no vested property rights in a certain condominium owned by the debtor and the condominium therefore became property of the estate free and clear of the spouse's interest. The District Court recognized that the bankruptcy court's decision was consistent with New York law, but also recognized the notion that while the non-debtor spouse may have rights that may not have *vested,* a constructive trust should be imposed on the condominium in her favor. *Hilsen,* 119 B.R. at 439–40.

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, . . . or property settlement agreement, but not to the extent that—. . .

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support, . . . or

. . .

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, . . . unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to

Significantly, no party in this litigation has suggested, much less argued, that a constructive trust should be imposed; nor is such a finding necessary to a determination of the motion for summary judgment.

**14.** This conclusion is supported by the recent Second Circuit decision in *In re Ostashko,* 468 F.3d 99 (2d Cir.2006). In the *Ostashko* case there was a pre-petition decision by the state court awarding the non-debtor spouse 100% of the marital assets. The judgment embodying this decision was not entered by the state court until after the debtor's bankruptcy case was commenced. The non-filing spouse sought a declaration that the marital assets were not property of the estate by virtue of the pre-petition decision by the state court. The Second Circuit held that the non-titled spouse does not gain any rights in marital property until the docketing of the judgment awarding same, and the non-debtor spouse's rights may be no greater than that of a general unsecured creditor.

be expended for the maintenance or support of the debtor or a dependent of the debtor . . .; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor; . . . .

■ Section 523(c) provides that, except in certain circumstances not relevant here, "the debtor shall be discharged from a debt of a kind specified in paragraph (2), (4), (6), or (15) of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph (2), (4), (6), or (15), as the case may be, of subsection (a)." 11 U.S.C. § 523(c). This provision gives the Bankruptcy Courts exclusive jurisdiction to make determinations of non-dischargeability under Sections 523(a)(2), (4), (6), or (15). *See In re Rey*, 324 B.R. 449, 455 (Bankr. E.D.N.Y.2005). The Bankruptcy Rules provide that any request to determine dischargeability under Sections 523(a)(2), (4), (6), or (15) must be filed within 60 days after the first date set for the meeting of creditors. *See* Fed. R. Bankr.P. 4007(c). By negative implication, there is no time limit within which to file determinations as to non-dischargeability under Sections 523(a)(1), (3), (5), (7) through (14), or (16) through (18). *In re Taibbi*, 213 B.R. 261, 273 (Bankr.E.D.N.Y.1997). This also implies that bankruptcy courts do not have exclusive jurisdiction to determine non-dischargeability under those sections. *Id.*

■ For these reasons, the Court holds that it is too late now—and was too late at the time that the Defendants

sought to enforce the debt post-discharge—for the Defendants to argue that the Debtor's obligations to Weissberg are non-dischargeable under Section 523(a)(15), as that basis is time-barred. The time within which to seek a determination of the non-dischargeability of a debt under § 523(a)(15) is no later than 60 days of the first date set for the meeting of creditors. *See* Fed. R. Bankr.P. 4007(c). There is no dispute that Defendants failed to commence an adversary proceeding within this time period.[15] Moreover, the Defendants admit that if the obligations were in the nature of property settlements under Section 523(a)(15), then those obligations were discharged in bankruptcy. (Defendants' Reply ¶ 3).

Defendants argue, however, that the state court already has (impliedly) made a determination that the debts were non-dischargeable by entering the Judgment of Divorce and by finding that the Debtor is liable notwithstanding his prior discharge in bankruptcy. In particular, the Defendants argue that under the cases of *In re Scott*, 244 B.R. 885 (Bankr.E.D.Mich.1999), *In re Beardslee*, 209 B.R. 1004 (Bankr. D.Kan.1997) and *In re Read*, 183 B.R. 107 (Bankr.E.D.La.1995), there is a basis for finding that the entry the Judgment of Divorce post-discharge is a binding determination that the obligations created thereby are non-dischargeable.

This Court disagrees and to the extent that the *Scott, Beardslee* and *Read* cases require a different result in this case, the Court respectfully declines to follow those cases. The issues before the State Court here were whether the parties should be divorced, which parent should have custody of the child, and the manner in which the marital property should be divided. The pleadings were filed by the parties

---

**15.** Weissberg commenced an adversary proceeding within this time period but only sought a determination of non-dischargeability with respect to certain child support obligations owing to her. *See* Adv. Pro. No. 800-8099–511.

prior to the Debtor filing his bankruptcy petition. The record is silent as to whether any party affirmatively sought a determination of the non-dischargeability of any debts from the State Court.[16] Consequently, this Court accepts the Judgment of Divorce as being simply that: a judgment determining the divorce of the parties, together with a determination as to those issues raised by the estranged spouses' pleadings. In rendering its decision that each spouse was entitled to certain property, the State Court made its findings based upon the trial record in accordance with the domestic relations laws of New York State which require, among other things, that the state court look at the totality of the circumstances of the marital property. *See* N.Y. Dom. Rel. § 236(5) (McKinney 2006). To the extent that the Defendants' claims against the Debtor were unmatured at the time of the filing of his bankruptcy petition, the Judgment of Divorce also served to liquidate those claims.

▉▉▉▉▉ The above findings preclude the application of the *res judicata* doctrine applied in the *Read* and *Scott* cases. The doctrine of *res judicata* has four elements: (1) the parties must be identical in the two actions; (2) the prior judgment must have been rendered by a court of competent jurisdiction; (3) there must be a final judgment on the merits; and (4) the same cause of action must be involved in both cases. *Read,* 183 B.R. at 110. As ex-

plained above, this Court finds that there was no final judgment on the merits with respect to any Section 523 cause of action in the State Court; nor do the State Court action and the instant proceedings involve the same causes of action. It is also clear that there is no State Court decision or judgment determining any Section 523 cause of action. Moreover, in this complaint, the Debtor is asserting a cause of action under Section *524* of the Bankruptcy Code—and *not* Section *523*. The causes of action are not the same and the doctrine of *res judicata* does not preclude a ruling by this Court.[17]

▉▉▉ The Defendants also argue that the *Beardslee* case requires this Court to decline jurisdiction under the *Rooker–Feldman* doctrine. Based on *Beardslee,* the Defendants argue that the issues determined by the State Court in the Judgment of Divorce were "inextricably intertwined" with the issue of the Debtor's discharge and the Debtor should be precluded from revisiting the State Court's judgment in Bankruptcy Court under the *Rooker–Feldman* doctrine. Recent caselaw confirms that the application of the *Rooker–Feldman* doctrine is .extremely limited, however, particularly in the bankruptcy context and the Court declines to extend the *Rooker–Feldman* doctrine on the facts of this case. The Debtor here does not ask this Court to review or overturn the Judgment of Divorce. Rather, the Debtor here asks this Court to make a

---

16. In support of their *res judicata* and *Rooker–Feldman* defenses, the Defendants argue that the State Court "thoroughly considered" issues of non-dischargeability. However, they fail to explain which subsection of Section 523(a), if any, that the State Court considered, and they fail to provide the Court with any order by which the State Court made specific findings that the obligations were non-dischargeable under Section 523.

17. The case of *In re Cruz,* 254 B.R. 801, 810 (Bankr.S.D.N.Y.2000), supports this result. In *Cruz,* the Court found that the "plain language of § 524(a)(1) provides that any judgment is void if it is a determination of the personal liability of the debtor with respect to a discharged debt. Nothing in § 524(a)(1) distinguishes the type of judgment subject to the provision. Nor does the section lead one to conclude that the level of participation by the debtor in a state court should be considered in the application of the section."

determination as to whether the Defendants violated the discharge injunction under Section 524. *See Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 292, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005) ("When there is parallel state and federal litigation, *Rooker–Feldman* is not triggered simply by the entry of judgment in state court"); *Sasson v. Sokoloff (In re Sasson)*, 424 F.3d 864, 871 (9th Cir.2005) ("The *Rooker–Feldman* doctrine has little or no application to bankruptcy proceedings that invoke substantive rights under the Bankruptcy Code or that, by their nature, could arise only in the context of a federal bankruptcy case").

The Defendants here appear to have proceeded in State Court to collect the debt on an unfounded presumption that it was not discharged. They did so at their peril. The Court disagrees with their belief that the obligations owed by the Debtor–Plaintiff were "in the nature of alimony, maintenance and support." No such presumption arises as a matter of law and, in this instance, having had actual knowledge that the Debtor–Plaintiff had received a discharge of his debts in bankruptcy, they were on heightened notice that they should proceed cautiously. To be sure, *if* the obligations were in the nature of alimony, maintenance or support, the state court would have had concurrent jurisdiction to make a determination as to non-dischargeability under Section 523(a)(5). But the record is devoid of any request having been made by the Defendants for the State Court to determine that the obligations

owed by the Debtor–Plaintiff were in the nature of alimony, maintenance or support—and it is also devoid of any ruling having been made by the State Court in this regard.

The Defendants also argue in their memorandum of law that the obligations to Weissberg are non-dischargeable because the Debtor failed to list them specifically in his bankruptcy schedules. 11 U.S.C. § 523(a)(3). More specifically, they urge that "[e]ven had plaintiff listed the debts which he now claims are discharged, Section 523(a)(15) leaves it to the discretion of the Bankruptcy Court to determine the dischargeability or non-dischargeability of the debts." *See* Kay Affidavit, Exh. 2. As noted earlier, however, a determination under Section 523(a)(15) is time-barred, and the Judgment of Divorce makes no mention of Section 523(a)(3) or (a)(5) or statement that the obligations were in the nature of alimony, maintenance or support. Indeed, to the contrary, the Judgment of Divorce provides that "there is no award of maintenance." While such labels are not binding upon a Bankruptcy Court when making a determination of dischargeability under Section 523, it supports the notion that the award by the State Court was in the nature of a property settlement and *not* in the nature of alimony, maintenance and child support.[18]

■ In sum, the Court finds that the Defendants proceeded at their peril when they continued their collection efforts against the Debtor despite knowing that there had been entry of the Discharge.[19]

---

**18.** The Court sees no basis for non-dischargeability under Section 523(a)(3). Kay and Weissberg were listed as creditors in Schedule E to the Debtor's petition, and Weissberg was listed in Schedule F and both received notice of the filing of the Debtor's bankruptcy case. The mere fact that the amount of the alleged liability was not listed or listed incorrectly does not matter for the purposes of

determining the applicability of Section 523(a)(3).

**19.** The issue as to whether the obligation at issue is non-dischargeable under Section 523(a)(5)—which is the only viable relief that would enable the Defendants to proceed against the Debtor in state court—is not before the Court, not having been raised by any

Moreover, the efforts by the Defendants to collect upon the dischargeable debt were intentional and in flagrant disregard of this Court's order. All of the following factors supports this finding:

- The failure to seek, much less obtain, a definitive ruling from the State Court that the Debtor's obligations under the Judgment of Divorce at issue are non-dischargeable under Section 523;

- The Defendants' uncertainty as to under which subsection of 523(a) these obligations might be non-dischargeable, i.e., Section 523(a)(3), (a)(5) or (a)(15), since these sections are mutually exclusive of the other;

- The fact that Weissberg had previously sought a determination of non-dischargeability with respect to the child support obligations, clearly knowing the process and the manner by which such relief must be obtained from the Bankruptcy Court;

- Despite having commenced a non-dischargeability action with respect to child support that she alleged was due and owing, Weissberg nonetheless chose not to do so with respect to the obligations at issue here; and

- The fact that the obligations at issue were not clearly delineated as being in the nature of alimony, maintenance or support in the Judgment of Divorce— to the contrary, the Judgment of Divorce provided that no maintenance was required to be paid by the Debtor.

The Court thus believes that the Defendants wilfully violated the discharge injunction when they pursued the state court collection efforts against the Debtor in June 2001. Moreover, not one of the seven affirmative defenses originally asserted by the Defendants in their Amended Answer, dated November 28, 2001, alleges that the claims at issue were for alimony, maintenance or support. Instead, by their affirmative defenses, the Defendants alleged that the claims were in the nature of "jointly-held property," and "were occasioned by fraud, wrongful conversion and misappropriation." At no time did the Defendants seek a determination by this Court that the claims at issue here are non-dischargeable under Section 523(a)(2) (fraud), (a)(4) (larceny) or (a)(6) (willful and malicious injury), and in any event, those causes of action are time-barred. It is not clear to the Court upon what good faith basis the Defendants were proceeding with their collection efforts. The unfounded belief(belatedly raised by Defendant's substituted counsel) that the claims *may have been* in the nature of alimony, maintenance or support, or may have been waived, or may have been impliedly determined by the Judgment of Divorce, is not enough to convince this Court that the Defendants had any basis upon which to proceed with the collection efforts. (Defendants' Reply ¶ 10).

 Courts which have analyzed whether a violation of the discharge injunction was "willful" have applied the same "willfulness" standard applied under Section 362(h) for violations of the automatic stay. *See Hardy v. United States of America (In re Hardy)*, 97 F.3d 1384, 1390 (11th Cir.1996); *In re Cherry*, 247 B.R. 176, 187 (Bankr.E.D.Va.2000). Applying that standard to the discharge injunction, a court will find that a creditor violated the discharge injunction if it finds that the creditor (1) knew that the discharge had issued, and (2) intended the actions which violated the discharge injunction. *Id.* The focus of the court's inquiry "is not on the subjective beliefs or intent of the alleged contemnors in complying with the order, but whether in fact their conduct complied with the order at issue." *Id; see also In re Crysen/Monte-*

party. For that reason, the Court need not resolve it.

*nay Energy Co.,* 902 F.2d 1098, 1104–05 (2d Cir.1990) ("any deliberate act taken in violation of a stay, which the violator knows to be in existence, justifies an award of actual damages"); *In re Robinson,* 228 B.R. 75, 81 & fn. 5 (Bankr. E.D.N.Y.1998) ("Section 362(h) ... provides a remedy to individual debtors harmed by a willful violation of the automatic stay. If section 362(h) were limited to violators who had specific intent to violate the stay, the deterrent effect of the damages remedy, and the relief it affords wronged debtors, would the compromised inappropriately"); *Helms v. Bridges (In re Bridges),* Case No. 89 B 16271, 1993 WL 98666 (Bankr.N.D.Ill. March 30, 1993) ("A violation of a stay is willful even if the creditor believed itself justified in taking the action found to be violative of the stay") (citations omitted). A mistaken belief that the debt at issue was not discharged (or was reaffirmed) does not negate a finding that a creditor willfully violated the discharge injunction. *In re Lowthorp,* 332 B.R. 656, 659–60 (Bankr. M.D.Fla.2005) (finding that IRS willfully violated discharge injunction even though IRS believed debt was not discharged); *In re Cherry,* 247 B.R. at 188–89 (finding

that creditor's mistaken belief that debt being collected was reaffirmed did not negate finding of willfulness for violation of discharge injunction).

To answer the question posed at the beginning of this section, it is not necessary for the Court to determine whether or not the Debtor's obligations to Weissberg were *in fact* non-dischargeable under Section 523(a)(5). At no time has either party filed an adversary complaint under Section 523(a)(5) and the Court can not make such a determination absent compliance with the rules governing adversary proceeding. *See* Fed. R. Bankr.P. 7001, *et seq.* The sole cause of action of the instant Complaint seeks damages for willful and malicious violations of the Discharge Order. For the reasons stated in this Decision, the Court finds that the Defendants had knowledge of the Discharge in this case and that their acts to collect the debt at issue were intentional acts. Therefore, the Court finds as a matter of law that the Defendants willfully violated the Discharge Order despite their contentions that they were acting on a good faith belief that the debt at issue was non-dischargeable under Section 523(a).[20]

**20.** The Debtor also challenges Weissberg's standing to pursue any claims arising out of the matrimonial action because of her failure to schedule the matrimonial action and her claims against the Debtor in a bankruptcy petition that *she* filed with this Court on June 16, 1998. The matrimonial action was filed sometime in 1997 and clearly was pending at the time Ms. Weissberg filed her bankruptcy petition. This Court and others have held that a debtor who has failed to schedule an asset in their bankruptcy petition, including claims in a matrimonial action, has no standing to pursue that asset after that debtor's bankruptcy case is closed. *See In re Costello,* 255 B.R. 110 (Bankr.E.D.N.Y.2000); *see also In re Cundiff,* 227 B.R. 476 (6th Cir. BAP 1998).

Section 554(c) and (d) of the Bankruptcy Code provide that:

(c) unless the court orders otherwise, any property scheduled under section 521(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.

(d) Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate.

There are serious potential consequences to Weissberg's failure to schedule the matrimonial action and her potential claims against the Debtor in her bankruptcy petition. For example, as a result of Weissberg's failure to schedule these claims, consistent with the holdings of *Costello* and *Cundiff,* it follows that even if the claims at issue were found to be non-dischargeable, Weissberg is not the proper party to enforce or collect any mone-

*Punitive Damages*

The final issue before the Court is whether punitive damages of $23,400 are appropriate in this case. The Defendants argue that punitive damages are unavailable in cases involving civil contempt, citing *In re Costa*, 172 B.R. 954 (Bankr. E.D.Ca.1994). The Defendants also attempt to distinguish *In re Watkins*, 240 B.R. 668 (Bankr.E.D.N.Y.1999), which directly held that punitive damages are available for willful violations of the discharge injunction.

The Court finds that in certain circumstances punitive damages are indeed appropriate in cases involving willful violation of the discharge injunction and believes the *Watkins* case is still good law in this District. The Court is also mindful, however, that punitive damages are typically awarded in cases where there is particularly egregious creditor misconduct. *See In re Rey*, 324 B.R. 449, 458 (Bankr. E.D.N.Y.2005); *In re Cruz*, 254 B.R. 801, 817 (Bankr.S.D.N.Y.2000) (requiring malicious or egregious conduct). Upon reconsideration, this Court finds that punitive damages in the amount of $23,400 is too excessive and should be reduced to the sum of $2,500. While the defendants' conduct was egregious, the penalty should not be unduly harsh. *See BMW of North America, Inc. v. Gore*, 517 U.S. 559, 576–77, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). With respect to the Court's Order awarding actual damages, attorney's fees and costs in the amount of $7,800, there is no reason to modify this ruling.

## CONCLUSION

For all these reasons, the Court grants the Defendants' motion to vacate and reconsider the Order. Upon reconsideration, the Court concludes that the Debtor's motion for summary judgment should be granted, except that punitive damages in the amount of $23,400 are modified and reduced to the sum of $2,500.

In light of this Decision, the Court finds that the Defendants request for a stay is moot.

The Court will enter a separate Order consistent and coincident with this Decision.

tary distributions arising out of the matrimonial action.