**In re: Nigel Anthony RUSSELL and Diane Russell, Debtors.**

**Nigel Anthony Russell, Plaintiff,**

**v.**

**Chase Bank USA, NA, Defendant.**

**Bankruptcy No. 02–14638–608.**

**Adversary No. 06–01502–608.**

United States Bankruptcy Court, E.D. New York.

Dec. 6, 2007.

sell also asserts that Chase willfully violated the Fair Credit Reporting Act, and that this intentional violation of non-bankruptcy law, though not a separate basis for recovery in this proceeding, is grounds for imposition of punitive damages. In addition, Russell asserts a claim for defamation.

Plaintiff's allegations in this case are similar in all relevant respects to those pleaded in *Torres v. Chase Bank USA, N.A. (In re Torres)* 367 B.R. 478 (Bankr. S.D.N.Y.2007), where The Honorable Robert D. Drain thoroughly and incisively analyzed the legal issues presented here. For the reasons set forth below and in *Torres,* Chase's motion is granted as to the defamation claim and otherwise is denied.

*Facts*

The following is a summary of the relevant allegations of the complaint.

Russell filed a voluntary petition under Chapter 7 of the U.S. Bankruptcy Code on April 12, 2002. (Complaint[1] ¶ 11.) Prior to the commencement of the Chapter 7 case, Russell incurred credit card debt to Chase. Chase obtained a post-petition judgment on that debt, which was later vacated by stipulation. (Complaint ¶¶ 10, 12, 14–15.) Russell's debt to Chase was never reaffirmed or declared non-dischargeable. (Complaint ¶¶ 10, 12.) Russell received a discharge of all pre-petition unsecured obligations on August 29, 2002. (Complaint ¶¶ 16–17.) Chase received actual notice of Russell's discharge by service of the discharge order. (Complaint ¶¶ 18–19.)

On April 3, 2006, Russell received copies of his credit reports from Experian ("Experian report") and Equifax ("Equifax report"). (Complaint ¶¶ 21, 23.) Russell's

Jay S. Fleischman, Brooklyn, NY, for Plaintiff.

Thomas E. Stagg, Jacqueline M. Della Chiesa, Simmons, Jannace & Stagg, LLP, East Meadow, NY, for Chase Bank USA, N.A.

*DECISION*

CARLA E. CRAIG, Chief Judge.

This matter comes before the Court on the motion of defendant Chase Bank USA, N.A., ("Chase") to dismiss this adversary proceeding, which was commenced by Nigel Anthony Russell ("plaintiff" or "Russell"), seeking actual and punitive damages against Chase based on allegations that Chase violated the discharge injunction provided by 11 U.S.C. § 524 by intentionally failing to correct erroneous information on Russell's credit reports in order to collect a discharged debt from him. Rus-

---

1. "Complaint" refers to the complaint filed on November 17, 2006.

debt to Chase is recorded on the Experian report as "Account charged off/Past due 150 days" and shows a recent balance of $9,229 as of March 2002, with $1,441 past due as of March 2002. (Complaint ¶ 21.) Russell's debt to Chase is shown on the Equifax report as a "Charge Off" and also shows a balance of $9,229 as of March 2002. (Complaint ¶ 23.)

On April 20, 2006, Russell, through his attorney, notified Chase by letter that it was erroneously reporting the debt to credit reporting agencies as past due and owing and that a creditor may only report a debt discharged in bankruptcy as having a "0" balance (Complaint ¶¶ 24, 25), and demanded that Chase immediately report corrected and updated information to Equifax, Experian and TransUnion and notify Russell's attorney upon doing so. (Complaint ¶¶ 24–25.) Neither Russell nor his attorney received a response from Chase. (Complaint ¶ 26.)

On May 31, 2006, Russell requested Experian, Equifax and TransUnion to reinvestigate amounts owed to creditors listed on his bankruptcy petition, including Chase. (Complaint ¶ 27.) Chase received requests from Experian and TransUnion to verify that the debt owed by Russell was discharged in bankruptcy, to which Chase responded that the debt was still due and owing. (Complaint ¶¶ 28–29.) On June 14, 2006, Russell received a copy of his credit report from TransUnion ("TransUnion report"), which reported Russell's debt to Chase as "Discharged Off As Bad Debt" and having a balance of $9,229 as of March 2002. (Complaint ¶ 30.)

Russell initiated this adversary proceeding on November 17, 2006, alleging that Chase's conduct violated the discharge injunction under 11 U.S.C. § 524(a)(2) (Complaint ¶¶ 33(A) and (B)) and violated the Fair Credit Reporting Act ("FCRA").[2] (Complaint ¶ 33(D).) Russell argues that Chase's willful violation of the FCRA, though not asserted as a claim in this proceeding, is additional grounds for the imposition of punitive damages. Russell also asserts a claim for defamation. (Complaint ¶ 69.)

*Jurisdiction*

■ This Court has jurisdiction under 28 U.S.C. §§ 1334(b), 157(b)(1) and (2)(O), and the Eastern District of New York standing order of reference dated August 28, 1986, of the claim brought under 11 U.S.C. § 524(a)(2), which constitutes a core proceeding.

■ However, this Court lacks subject matter jurisdiction over Russell's defamation claim, which does not fall within the ambit of "related to" jurisdiction. *Torres v. Chase Bank USA, N.A. (In re Torres)*, 367 B.R. 478, 481 (Bankr.S.D.N.Y. 2007). A claim is "related to" a bankruptcy case when the outcome of the claim would have a "conceivable effect" on the bankruptcy estate. *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984), *overruled on other grounds by Things Remembered v. Petrarca*, 516 U.S. 124, 116 S.Ct. 494, 133 L.Ed.2d 461 (1995); *Publicker Indus., Inc. v. United States (In re Cuyahoga Equip. Corp.)*, 980 F.2d 110, 114 (2d Cir. 1992); *see Fernicola v. General Motors Acceptance Corp.*, Case No. 5:01–CV–1385, 2002 WL 34343744. *2, 2002 U.S. Dist. LEXIS 25164, at *8 (N.D.N.Y. Dec. 12, 2002) ("related to" jurisdiction was lacking because the outcome of claims brought under the Truth in Lending Act, the FCRA, and the Fair Debt Collection Prac-

---

**2.** 15 U.S.C. §§ 1681s.

tices Act ("FDCPA") would not have conceivable effect on bankruptcy estate). Here, Russell has received his discharge and his bankruptcy estate is fully administered. Any damages received in this action will inure solely to his benefit. Because the outcome of Russell's defamation claim will not affect the bankruptcy estate, the claim does not fall within the parameters of "related to" jurisdiction. *Torres*, 367 B.R. at 481.

■ This Court has no authority to exercise supplemental jurisdiction to hear this claim. *Torres*, 367 B.R. at 481. The language of 28 U.S.C. §§ 1334 and 157 clearly limits the matters that may be referred by the district court to the bankruptcy court to those arising under, arising in and related to title 11. *Enron Corp. v. Citigroup, Inc. (In re Enron Corp.)*, 353 B.R. 51, 59 (Bankr.S.D.N.Y.2006); *see also Goldstein v. Marine Midland Bank, N.A. (In re Goldstein)*, 201 B.R. 1, 7 (Bankr. D.Me.1996) (supplemental jurisdiction is not encompassed in § 157(a), which was drafted by Congress as a narrow, restrictive "vessel through which jurisdiction may be passed to the bankruptcy courts") (citing *Boyajian v. DeLuca (In re Remington Dev. Group, Inc.)*, 180 B.R. 365, 372–373 (Bankr.D.R.I.1995)); *In re Torres*, 367 B.R. at 482 ("[t]he district court could no more refer its supplemental jurisdiction than it could refer its copyright, criminal or diversity jurisdiction") (quoting *Masterwear Corp. v. Rubin Baum Levin Constant & Friedman (In re Masterwear Corp.)*, 241 B.R. 511, 517 n. 6 (Bankr. S.D.N.Y.1999)). Russell's defamation

claim must therefore be dismissed for lack of subject matter jurisdiction.

Although he does not assert a claim against Chase under the FCRA, Russell claims that Chase willfully violated the FCRA, and that this intentional violation of law constitutes additional grounds for the imposition of punitive damages in this proceeding. Because no claim is asserted under the FCRA, this Court's jurisdiction to consider such a claim is not at issue.[3]

*Legal Standard*

Chase's motion to dismiss is governed by Federal Rule of Civil Procedure 12(b)(6), made applicable in bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7012.

■ To defeat a motion to dismiss under 12(b)(6), a complaint must set forth a "plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, —— U.S. ——, 127 S.Ct. 1955, 1967, 167 L.Ed.2d 929 (2007). Conceivable claims are no longer sufficient. *Bell Atl.*, 127 S.Ct. at 1974 (A complaint should be dismissed under 12(b)(6) where "plaintiffs ... have not nudged their claims across the line from conceivable to plausible."). As interpreted by the Second Circuit, the plausibility requirement does not create a heightened pleading standard, but rather a flexible standard that "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty*, 490 F.3d 143, 157–158 (2d Cir.2007); *see Bell Atl.*, 127 S.Ct. at 1965 ("Factual allegations

---

3. As Judge Drain noted in *Torres*, 367 B.R. at 481 n. 3, the FCRA may be relevant to claims asserted under § 524(a) of the Bankruptcy Code. "For example, if the information supplied by Chase to the credit reporting agencies is [in]accurate for purposes of the FCRA

... one may question why Chase has not corrected it and, if supported by other allegations, arguably may infer an improper motive from Chase's refusal to correct it." *Id.* at 483 n. 5.

must be enough to raise a right to relief above the speculative level."). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl.,* 127 S.Ct. at 1969.

In assessing the adequacy of the complaint, the court "must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to [Russell], and construe the complaint liberally." *Gregory v. Daly,* 243 F.3d 687, 691 (2d Cir.2001) (citing *Tarshis v. Riese Org.,* 211 F.3d 30, 35 (2d Cir.2000)). The court's consideration is limited to the four corners of the complaint; documents attached to the complaint as exhibits or incorporated in it by reference; matters of which judicial notice may be taken; and documents either in plaintiff's possession or of which he had knowledge, on which plaintiff relied in bringing suit. *Brass v. Am. Film Tech., Inc.,* 987 F.2d 142, 150 (2d Cir.1993). A motion to dismiss under 12(b)(6) requires the court to evaluate a complaint's legal feasibility, "not to assay the weight of the evidence which might be offered in support thereof." *Amalgamated Bank of N.Y. v. Marsh,* 823 F.Supp. 209, 215 (S.D.N.Y. 1993) (quoting *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.,* 748 F.2d 774, 779 (2d Cir.1984)).

Here, the Complaint amply satisfies the *Bell Atlantic* standard.

### Discussion

#### I. *Russell's Claims*

Russell alleges that Chase, a furnisher of information to consumer credit report-

ing agencies under the FCRA,[4] refused to update Russell's credit information to reflect his subsequent discharge in bankruptcy, despite receiving actual notice of the discharge and several requests by Russell to correct his credit information, as well as inquiries from credit reporting agencies concerning the continuing accuracy of the pre-bankruptcy information provided by Chase. As a result, Russell's Experian, Equifax and TransUnion credit reports all misrepresent his debt to Chase as having a balance that is either past due and owing, "charged off" or "charged off as bad debt." This reporting leads users of credit reports to believe that Russell owes an enforceable debt to Chase, thus adversely affecting his ability to obtain new credit and the cost of obtaining such credit. Russell alleges that Chase knowingly and deliberately failed and refused to provide correct credit information to the credit reporting agencies with the knowledge that the incorrect information appearing on Russell's credit reports adversely affects his ability to get new credit, and that this constitutes an attempt to collect a discharged debt as prohibited by 11 U.S.C. § 524(a)(2). Russell contends in essence that Chase is deliberately refusing to inform the credit reporting agencies that his debt to Chase was discharged, in order to pressure him to repay the discharged debt. (Complaint, ¶¶ 56–60.)

#### II. *Chase's Motion to Dismiss*

■ Chase contends that Russell has failed to allege any conduct on Chase's part that constitutes an act to collect under 11 U.S.C. § 524(a)(2). Chase points out

4. 15 U.S.C. § 1681s–2(a)(2)(A) (One who "regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about ... trans- actions or experiences with any consumer" has a duty to correct and update credit information.)

Russell's credit reports reflect a debt that Chase accurately reported prior to Russell's bankruptcy, and argues that although the discharge in bankruptcy eliminates his personal liability for that debt, it does not extinguish it. Chase further argues that it is under no obligation to update Russell's credit information post-discharge and therefore its failure to do so is not an attempt to collect a debt.

Contrary to Chase's contention, the plain language of § 524(a)(2) is not so restrictive as automatically to place Chase's conduct within permissible bounds. In pertinent part, § 524(a)(2) provides:

> (a) A discharge under this title
>
> \* \* \* \* \* \*
>
> (2) operates as an injunction against the commencement or continuation of an action, the employment of process or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.

11 U.S.C. § 524(a)(2).

■ Collection efforts prohibited by § 524(a)(2) are not limited to "collection litigation ... [and] such traditional, direct collection activity as dunning letters or telephone calls." *Torres,* 367 B.R. at 484. The statute enjoins "any act to collect a discharged debt as a personal liability of the debtor." *Id.* This could certainly include, as Russell alleges, a deliberate refusal to correct information previously supplied to credit reporting agencies, for the purpose of coercing him to repay a discharged debt. *Id.* (injunction under § 524(a)(2) is broad and extends to activity intended to produce repayment of the discharged debt) (citing *4 Collier on Bankruptcy ¶ 524.02[2]* (15th ed.2007)). "In-

deed, the pressure of not getting a new mortgage or having to pay a higher rate because of a credit report's inaccurate characterization of a discharged debt could well exceed the irritation [and coercion] caused by dunning letters, which one ... may throw in the trash without fear of adverse consequences." *Id.* at 485–486. Furthermore, the legislative history, cited by Chase to support the proposition that Congress intended § 524(a)(2) to be restrictive, actually "supports a broad reading of the injunction contained in § 524(a)(2)." *Id.* at 485. "[Section 524(a) ] is intended to insure that once a debt is discharged, the debtor will not be pressured in any way to repay it. In effect the discharge extinguishes the debt, and creditors may not attempt to avoid that." *Id.* (quoting H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 365–66 (1977); S.Rep. No. 95–989, 95th Cong. 2nd Sess. 80 (1978)).

To support its contention that § 524(a)(2) should be narrowly read, Chase primarily relies upon three decisions, all of which are distinguishable from this case. Chase cites *Irby v. Fashion Bug (In re Irby),* 337 B.R. 293 (Bankr. N.D.Ohio 2005), for the proposition that because a discharge in bankruptcy does not extinguish a debt, "the information that the creditor had previously provided to the credit reporting agencies was still accurate, notwithstanding the debtor's subsequent discharge." *Torres,* 367 B.R. at 487 (citing *Bruno v. First USA Bank (In re Bruno),* 356 B.R. 89, 92 (Bankr. W.D.N.Y.2006); *Irby,* 337 B.R. at 295). However, unlike the plaintiff in this case and in *Torres,* the *Irby* plaintiffs were moving for a default judgment and "were put to their proofs, fell back on the complaint and were found to be lacking by the court." *Id.* Even the *Irby* court acknowledged that "reporting a debt can be con-

sidered an act sufficient to violate the discharge injunction, 'if the act of reporting a debt was undertaken for the specific purpose of coercing the debtor into paying the debt.' " *Lohmeyer v. Alvin's Jewelers (In re Lohmeyer)*, 365 B.R. 746, 750 (Bankr. N.D.Ohio 2007) (quoting *Irby*, 337 B.R. at 295).

*Vogt v. Dynamic Recovery Servs. (In re Vogt)*, 257 B.R. 65 (Bankr.D.Colo.2000) is similarly distinguishable from the instant case. *Vogt* also arose in the context of a default judgment, where the court again noted that no evidence of the creditor's intent to coerce payment was offered. *Vogt*, 257 B.R. at 71 ("There is absolutely no showing in this case that the Defendant had manufactured a false report in order to extract payment."). Russell, by contrast, does not simply allege inaccurate reporting by Chase. Rather, he claims that Chase refused to comply with his written request to update his credit information in order to pressure him to pay the discharged debt.

As Judge Drain observed in *Torres,*

[t]his is not a mere conclusory allegation. . . . One may reasonably infer that prospective lenders rely on the accuracy of credit reports when deciding whether to extend credit; if the credit reports show an outstanding, overdue debt, prospective lenders will assume that the plaintiffs have fewer resources with which to pay back a new loan. . . . It is reasonable to infer that Chase, whose business involves making and evaluating credit disclosures, knows this.

*Torres*, 367 B.R. at 485–486.

Chase also relies on *Bruno v. First USA Bank (In re Bruno)*, 356 B.R. 89 (Bankr. W.D.N.Y.2006), for the proposition that § 524(a)(2) does not compel Chase to take affirmative steps to correct Russell's credit report to reflect his discharge in bankruptcy. However, the debtors in *Bruno*, unlike Russell in the instant case, did not notify the lender of the inaccuracy of their credit report, nor did they request the lender to correct it. This is a critical distinction, as the *Bruno* court assumed that if the debtors had made a proper request, the report would have been corrected.

[I]f a debtor who has been discharged in bankruptcy wishes to avoid what the debtor asserts has occurred in this case, then attorneys for bankruptcy debtors should be advising their clients, after the issuance of the bankruptcy discharge, to obtain a copy of their credit report or reports and follow the established process under those other Acts for updating the record.

*Id.* at 92.

Also distinguishable is *Mahoney v. Wash. Mut., Inc. (In re Mahoney)*, 368 B.R. 579 (Bankr.W.D.Tex.2007). Unlike the instant case, *Mahoney* arose in the context of a motion for summary judgment. The *Mahoney* court concluded that

the mere reporting of credit information about a debtor *vel non* is not an "act" to collect a discharged debt within the meaning of the statute, unless the evidence shows (or in the context of a summary judgment motion, *might* show) that there is a linkage between the act of reporting and the collection or recovery of the discharged debt.

*Id.* at 584.

Here, of course, the Court is evaluating a motion to dismiss, not a motion for summary judgment, and the Complaint alleges that Chase's refusal to provide correct and updated information is for the purpose of coercing payment of the discharged debt.

At least for the purpose of this motion, the linkage between Chase's reporting and collection activity may be inferred, as Judge Drain explained in *Torres*, because Chase may be assumed to know that its refusal to provide correct information adversely affects plaintiff's credit score and ability to obtain new credit. *Torres*, 367 B.R. at 487.

As Judge Drain noted in *Torres*, "[o]ther courts have had no difficulty recognizing that false or outdated reporting to credit reporting agencies, even without additional collection activity, can constitute an act to extract payment of a debt in violation of section 524(a)(2)." *Id.* at 486. Such cases include *Lohmeyer*, 365 B.R. 746; *Carriere v. Fed. Credit Union*, Case No. 03–1894, 2004 WL 1638250, **7–8, 2004 U.S. Dist. LEXIS 14095, at *20–23 (W.D.La. July 12, 2004) (motion to dismiss denied); *In re Burgess*, Case No. 05–12813, 2007 WL 130818, **1–2, 2007 Bankr.LEXIS 142, at *4–6 (Bankr.E.D.Va. Jan. 12, 2007) (complaint sufficient); *Norman v. Applied Card Sys., Inc. (In re Norman)*, Case No. 04–11682, Adv. No. 06–1133, 2006 WL 2818814, *1, 2006 Bankr.LEXIS 2576, at *3–5 (Bankr.M.D.Ala. Sept. 29, 2006) (motion to dismiss denied); *Smith v. Am. General Fin. Inc. (In re Smith)*, Case No. 00–02375, Adv. No. 05–9085, 2005 WL 3447645, **2–3, 2005 Bankr.LEXIS 2481, at *6–7 (Bankr.N.D.Iowa Dec. 12, 2005) (motion to dismiss denied); *Helmes v. Wachovia Bank (In re Helmes)*, 336 B.R. 105, 109 (Bankr.E.D.Va.2005) (proceeding for injunction to correct credit report moot, because creditor had already corrected it.) "One court in denying a motion to dismiss went so far as to observe that '[t]he sheer number of cases may suggest that some creditors are systematically taking such action in an effort to diminish the value of a discharge in bankruptcy'." *Torres*, 367 B.R. at 486 (citing *Norman*, 2006 WL 2818814, *1, 2006 Bankr.LEXIS 2576, at *4).

Chase argues that it was under no obligation under the FRCA to update the outdated and incorrect information appearing on Russell's credit reports. Whether or not this is true (see FRCA § 1681s–2(a), requiring furnishers of credit information to provide "accurate information" to credit reporting agencies), one may, at least in the context of a motion to dismiss, infer an intent to collect a discharged debt from Chase's refusal to comply with Russell's request to correct his credit information. *See Torres*, 367 B.R. at 488–89.

Judge Drain's point in *Torres* is equally applicable here:

> As is not atypical under section 524(a) of the Bankruptcy Code, determining Chase's motions involves drawing lines between coercive and non-coercive behavior.... But here, Chase has not articulated any valid reason for refusing to correct its outstanding report. Its refusal, at this point, obviously is not a matter of inadvertence.... One may infer, therefore, that something is wrong with Chase's decision to rebuff the plaintiffs' legitimate request to make the record right, which puts Chase, for purposes of this motion, on the wrong side of the line under section 524(a).

*Id.* at 489 (citations omitted).

 Chase also moves to dismiss on grounds that Russell has not set forth a sufficient basis to award damages. The relief sought by Russell for a violation of § 524(a)(2) is essentially a sanction for civil contempt. *Torres*, 367 B.R. at 490 (citing *In re Cruz*, 254 B.R. 801, 816 (Bankr. S.D.N.Y.2000)). Civil contempt sanctions serve two purposes: "to coerce the defen-

dant into compliance with the court's order, and to compensate the complainant for losses sustained." *Torres,* 367 B.R. at 490 (quoting *Local 28 of Sheet Metal Workers' Int'l Ass'n v. EEOC,* 478 U.S. 421, 443, 106 S.Ct. 3019, 92 L.Ed.2d 344 (1986) (citations omitted). "[T]he burden rests with the movant to show [by clear and convincing evidence] that the offending ... entity had knowledge [actual or constructive] of the discharge and willfully violated it by continuing with the activity complained of." *Torres,* 367 B.R. at 490 (citing *Cruz,* 254 B.R. at 816 (quoting *Waswick v. Stutsman County Bank (In re Waswick),* 212 B.R. 350, 352 (Bankr. D.N.D.1997)). Attorneys' fees may also be awarded if Russell can show, in addition to a willful violation, "that the defendant acted in bad faith or in a vexatious or oppressive manner." *Torres,* 367 B.R. at 490 (quoting *In re Dabrowski,* 257 B.R. 394, 416 (Bankr.S.D.N.Y.2001)). Accordingly, Russell can be awarded compensatory damages as well as sanctions to coerce future compliance if he can prove that Chase knowingly and willfully, in bad faith, violated § 524(a)(2).

The allegations of the Complaint satisfy the test for civil sanctions. As stated succinctly by the *Torres* court:

> Given that Chase has continued to refuse to correct the information it previously reported ... as well as the plaintiffs' allegations that Chase has rebuffed their requests with the specific intent to pressure them into paying their discharged debts, the complaint[ ] on [its] face meet[s] the test [for awarding attorneys' fees]. The essence of the plaintiffs' allegations is that Chase has continued to lay a trap for them until the eventual day that they need an accurate credit report. Such behavior, if proven

at trial, would be sufficiently vexatious and oppressive to support at least a sanction in the amount of plaintiffs' costs and expenses incurred in releasing the trap, separate and apart from any sanction to coerce future compliance with § 524(a)(2).

*Torres,* 367 B.R. at 491 (citations omitted).

 Punitive damages may also be awarded in cases involving willful violation of the discharge injunction. *DiGeronimo v. Weissberg (In re DiGeronimo),* 354 B.R. 625, 644 (Bankr.E.D.N.Y.2006); *Watkins v. Guardian Loan Co. of Massapequa (In re Watkins),* 240 B.R. 668 (Bankr.E.D.N.Y. 1999). "[P]unitive damages are typically awarded in cases where there is particularly egregious creditor misconduct." *DiGeronimo,* 354 B.R. at 644. It is not possible to conclude, at this stage of the case, that punitive damages may not be recovered; plaintiff's allegations that Chase engaged in conduct amounting to a calculated and deliberate attempt to collect a discharged debt, if proven at trial, may meet the standard of misconduct required for an award of punitive damages.

### Conclusion

For the reasons stated in this opinion, this court holds that Chase's motion to dismiss the defamation claim is granted, and Chase's motion to dismiss Russell's claim for violation of the discharge injunction under § 524(a)(2) is denied.