In Rem as to Defendant, Stacey M. Noe [f/k/a Stacey M. Van Pelt], due to the Chapter 13 Bankruptcy filed in the Eastern District of Kentucky, case number 12-52572. Said bankruptcy was discharged via entered order therein on April 21, 2015. No personal judgment will be sought as to this Defendant.
[Id. ]
Chase's counsel in this matter, who was not Chase's original counsel in this bankruptcy case or the state court action, argued that this was likely only a protective measure and does not mean the lender believed the Debtor was discharged. That is not a reasonable interpretation. The complaint shows a clear understanding that the underlying personal obligation of the Debtor was discharged. It is fair to accept the plain reading of this statement when Chase has and will not offer contrary evidence.
C. Approval of the Loan Modification Agreement Did Not Modify the Treatment of Chase's Claim in the Confirmed Plan.
Chase suggests that its agreement to recapitalize any arrearage and take any payment outside the plan described in the Modification Motion and Modification Order shows the Debtor was not released from personal liability. Chase argues that the approval of the modification converted its claim to one under § 1322(b)(5), which is excepted from the chapter 13 discharge under § 1328(c)(1). [ECF No. 57 at 5.] This interpretation is not supported by the documents.
The Modification Motion contains several inaccurate statements that prove that a modification of the treatment of Chase's claim did not occur. Chase represented that the Debtor signed the Loan Modification Agreement, but the document is only signed by Robert Van Pelt, as Borrower. [ECF No. 37, Attachment 1.] Chase's assertion that any prepetition arrearage claim was recapitalized and no longer payable was also wrong because the Trustee was not making arrearage payments anyway. [Id. ] See also supra Part I and Part II.A.1 (the Trustee's Notice indicated no arrearage claim existed because the collateral was surrendered).
The Modification Motion and Modification Order suggest Chase wanted a comfort order or simply made a mistake. The Modification Motion and Modification Order indicate the plan remains feasible and the Debtor must take affirmative action for any plan amendment. [ECF Nos. 37 and 38.] The Debtor had no reason to object to entry of the Modification Order or seek a modification because there was no effect on her confirmed plan.
The Loan Modification Agreement also suggests Chase no longer looked to the Debtor for repayment of the underlying obligation. Robert is the only Borrower listed and nothing else in the agreement indicates the Debtor has continuing liability for the debt. This also calls into doubt Chase's argument that its claim was not treated because it could not file a deficiency claim. It never expected to have one.
*6 Regardless, Section II.C. of the Local Form Plan does not promise a creditor a deficiency claim. It recognizes a secured creditor may, but is not required to, participate in payments to unsecured creditors based on a deficiency claim. Also, the language exists to relieve the Trustee from the obligation to pay the claim until a deficiency amount is determined.
D. The Holding in Spata Does Not Apply.
Chase cited In re Spata to support its argument that surrender under § 1325(a)(5)(C) in the Local Form Plan is not payment of the claim. Case No. 09-52154, ECF No. 122 (Bankr. E.D. Ky. Apr. 22, 2016). In Spata , the chapter 13 debtors moved for sanctions against Chase for violation of the discharge injunction. The debtors' confirmed plan required post-petition payments to Chase outside the plan and payment of arrearages by the Trustee through the plan. The debtors were unable to make the payments and subsequently modified the plan to surrender the collateral. After surrender and discharge, Chase pursued collection of the discharged debt. Id. at 1-3.
The debtors argued the post-discharge communications violated the discharge injunction because the residence was surrendered to Chase "in full satisfaction of the debt." Id. at 4. The issue in Spata was the impact of surrender as used in a post-confirmation modification, not under § 1325(a)(5)(C). The ruling was limited to the debtors' narrow argument that the modified plan provisions provided for full satisfaction of Chase's claim: "The court is not called upon to interpret 'surrender' as that term is used in the bankruptcy code; but rather, how it is used in the Debtors' modified plan. In this modified plan, 'surrender' does not mean payment." Id.
Unlike in Spata , the question here is not whether the plan provides for payment of a specific claim. The issue is whether the claim was provided for by the plan and the Debtor's personal liability discharged. 11 U.S.C. § 1328(a). Chase reads too much into the Spata decision. The limited ruling in Spata is not relevant to this case.
E. Chase's Refusal to Correct Its Incorrect Reporting of the Discharged Debt Violated the Discharge Injunction.
A discharge "operates as an injunction against the commencement or continuation of any action, the employment of process or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(2). The Debtor alleges that Chase violated § 524(a)(2) by "incorrectly reporting its alleged debt against her under the Note, Mortgage and Modification Agreement" to credit reporting agencies. [ECF No. 52 at 5-6.] She attached copies of credit reports as evidence of that inaccurate reporting. [Id. , Exhs. 2,4.] The Debtor also alleges that she spoke to representatives of Chase and Chase "did nothing to correct the inaccurate information that it reported..." [Id. at 6.]
Chase does not dispute the factual allegations made by the Debtor, so they are accepted as true. These undisputed allegations and exhibits to the Motion are enough to confirm Chase violated the discharge injunction.
The review herein shows Chase knew the plan provided for its claim and the Debtor received her discharge. In re Joseph , 584 B.R. 696, 702 (Bankr. E.D. Ky. 2018). Chase does not dispute the Debtor's allegations that its reporting to the credit agencies was inaccurate and it refused to correct it when asked. Chase's only attempt *7 at a defense is the argument the debt was not discharged. This argument was decisively rejected in the preceding analysis. See Part II.A., supra .
The prior review leads to a conclusion that the argument is an unsupportable attempt to find a way around Chase's violation of the discharge injunction. Without any explanation otherwise, it is reasonable to infer that Chase's reporting and subsequent refusal to correct the inaccurate information is an attempt to collect a discharged debt. See In re Russell , 378 B.R. 735, 743 (Bankr. E.D. N.Y. 2007) (a court may infer intent to collect a discharged debt from a refusal to correct inaccurate credit information); Torres v. Chase Bank USA, N.A. (In re Torres) , 367 B.R. 478, 485-486 (Bankr. S.D. N.Y. 2007) (same).
Chase is in contempt for violation of the discharge injunction. The record is not sufficient to determine damages so additional work is required.
III. DECISION.
Based on the foregoing, it is ORDERED:
(1) The Debtor's Motion to Enforce Discharge Injunction Against JP Morgan Chase Bank, N.A. [ECF No. 52] is GRANTED;
(2) Chase is in CONTEMPT for violating the Discharge Order [ECF No. 48] under 11 U.S.C. § 524(a)(2) ; and
(3) The following shall apply to a determination of damages:
(a) The Debtor shall supplement the record with evidence in support of any damages incurred within 21 days of entry of this Order.
(b) Chase shall have 21 days after the Debtor supplements the record to file an objection.
(c) If Chase does not object, the matter will be deemed submitted for a decision.
(d) If Chase objects, both parties will have fourteen days to request an evidentiary hearing. If no party requests a hearing, the matter will be deemed submitted on the record for a decision.