

1995 Decisions

10-3-1995

# Hutchins v IRS

Precedential or Non-Precedential:

Docket 94-5509

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Hutchins v IRS" (1995). *1995 Decisions.* Paper 262.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/262

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 94-5509 and 94-5510


CHARLES T. HUTCHINS,

Appellant in 94-5509

v.

INTERNAL REVENUE SERVICE;
UNITED STATES OF AMERICA


CHARLES T. HUTCHINS

v.

INTERNAL REVENUE SERVICE;
UNITED STATES OF AMERICA

UNITED STATES OF AMERICA,

Appellant in 94-5510


On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 92-cv-04134)


Submitted Pursuant to Third Circuit LAR 34.1(a)
May 24, 1995

Before: GREENBERG, ROTH and ALDISERT, <u>Circuit Judges</u>


(Opinion Filed October 3, 1995)

Charles T. Hutchins
5011 Marshall Road
Farmingdale, NJ 07727
            Pro Se Appellant\Cross-Appellee

Faith S. Hochberg
United States Attorney
Loretta C. Argrett
Gary R. Allen
Bruce R. Ellisen
Bridget Rowan
Laurie Snyder
Assistant U.S. Attorneys
Tax Division
U.S Department of Justice
Post Office Box 502
Washington, D.C.  20044
            Attorneys for Appellee\Cross-Appellant

OPINION OF THE COURT

Roth, Circuit Judge:

In this appeal, Charles T. Hutchins, appearing pro se, and the Internal Revenue Service each challenge aspects of the entry of summary judgment below.  The district court granted summary judgment to the I.R.S. on its counterclaim to recoup an erroneous tax credit, but then, disturbed by this result, invoked equitable estoppel sua sponte to bar the I.R.S. from recovering all but a minor portion its claim.  This holding necessarily denied Hutchins' standing to sue for the original tax credit.  We reverse.  Hutchins had standing to pursue his original tax claim because in the bankruptcy proceedings that gave rise to this

3

case, the tax refund descended to him through abandonment as part of a properly scheduled antitrust action. Because the I.R.S. grounded its recoupment claim solely on Hutchins' lack of standing, our ruling on this issue is dispositive. We reach neither the validity of the underlying tax refund, which is not properly before us, nor the application of equitable estoppel, which is rendered superfluous.

## I. Factual and Procedural History

In November 1979 Hutchins, as sole proprietor of Hutchins Supply Company, filed a Chapter 7 Bankruptcy Petition in the U.S. Bankruptcy Court in Anchorage, Alaska. After the initial scheduling of all known assets and liabilities pursuant to 11 U.S.C. § 521(1), Hutchins learned that his business had failed because of his competitors' antitrust violations and unfair business practices. Hutchins instituted an antitrust action against these competitors, amending his schedules to reflect the antitrust cause of action as an asset of the bankrupt estate. By stipulation, the estate trustee allowed Hutchins to pursue the action, reserving the right to all settlement proceeds. In 1986, the resulting claims were settled for $243,000 in cash, which was turned over to the bankruptcy trustee. In addition, the antitrust defendants withdrew claims against the bankrupt estate for approximately $76,000 in business debt. On January 27, 1987, the trustee filed an estate income tax return reflecting both the cash and the retired debt as income.

4

On September 21, 1988, the trustee petitioned the U.S. Bankruptcy Court to abandon any remaining assets to Hutchins. The requisite order was issued on March 23, 1989. The bankruptcy proceedings were closed sometime prior to February 1989, re-opened on March 1, 1989, and closed a second time on March 14, 1990.

On April 2, 1989, Hutchins filed an amended tax return for 1987, asserting that pursuant to 26 U.S.C. § 108, the $76,000 in retired business debt was not taxable income. Hutchins sought a tax credit of $38,458, the amount he believed the trustee had overpaid by erroneously including the $76,000 in retired business debt as income. On January 22, 1992, the I.R.S. granted in part the claimed refund and applied a credit of $37,897.04 to Hutchins' tax arrearages. On September 29, 1992, Hutchins responded by filing a complaint against the I.R.S. in the U.S. District Court for the District of New Jersey seeking, among other relief, an additional credit of $650. The I.R.S. responded by counterclaiming for the entire January 1992 tax credit, alleging it was granted erroneously since Hutchins was not the proper party to receive a refund of taxes paid by the bankruptcy estate.

On May 24, 1993, the district court dismissed Hutchins' various prayers for relief on several grounds, leaving the I.R.S.'s counterclaim as the sole remaining dispute. That order has not been appealed. On January 10, 1994, on cross motions for summary judgment, the district court ruled in favor of the I.R.S. on its counterclaim, denied Hutchins' motion to dismiss, and

invoked equitable estoppel to bar the I.R.S. from recovering all but $663 plus interest from Hutchins.  Both parties appealed to this court.

## II.  Jurisdiction

The district court properly asserted federal jurisdiction over the I.R.S.'s counterclaim under 26 U.S.C. §7405(b).  We have jurisdiction over the district court's final order pursuant to 28 U.S.C. § 1291.  Our review of a grant of summary judgment is plenary.  Oritani Sav. & Loan Ass'n v. Fidelity & Deposit Co., 989 F.2d 635, 637 (3d Cir. 1993); Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976), cert. denied, 429 U.S. 1038 (1977).  The question of standing is itself subject to plenary review.  Polychrome Int'l Corp. v. Krigger, 5 F.3d 1522, 1530 n.19 (3d Cir. 1993).

## III.  Discussion

In its counterclaim in district court, the I.R.S. sought to recoup the entire tax credit it had granted Hutchins by asserting that he lacked standing to pursue the discrepancy.  The I.R.S. argued that because Hutchins had failed to schedule the tax claim explicitly as an asset of the bankrupt estate, the right to the refund was not abandoned but was instead retained by the estate.  Since the refund belonged to that separately taxable entity, only the trustee could sue for its recovery.  Hutchins therefore had no basis for his claim.  Consequently, any tax refund granted to Hutchins was erroneous and could be recovered. The district court implicitly conceded this much in an elliptical

comment[1] followed by its <u>sua sponte</u> application of equitable estoppel.  We disagree.  This line of reasoning ignores the fact that the tax refund originated as part of the properly scheduled antitrust action.  The refund claim was at best a derivative asset that arose as a result of the <u>trustee's</u> tax filings on behalf of the estate.  Moreover, the claim was not asserted until <u>after</u> the bankruptcy had closed.  Since it existed during the bankruptcy as an integral part of the antitrust claim--or if separately as a still inchoate right--the tax claim was properly scheduled through the scheduling of the antitrust action and descended to Hutchins through abandonment.  Hutchins had standing to sue.

**A.**

We observe in passing that if the tax refund were a unique asset that had to be scheduled separately, as the I.R.S. asserts, then the failure to schedule the refund is fatal to Hutchins' claim.  It is clear that an asset must be properly scheduled in order to pass to the debtor through abandonment under 11 U.S.C. § 554.  See <u>Vreugdenhill v. Navistar Int'l Transp. Corp.</u>, 950 F.2d 524, 526 (8th Cir. 1991) (refusing to find unscheduled cause of action abandoned even where trustee was aware of it prior to abandonment); <u>In re Medley</u>, 29 B.R. 84, 86-87 (Bankr. M.D. Tenn. 1983) (refusing to abandon unscheduled

---

[1]    The opinion's only language on point read:  "The Court is unpersuaded by defendant's argument that the credit issued to plaintiff's personal account should be completely rescinded <u>simply because plaintiff may have lacked standing to file the amended return at issue.</u>"  Hutchins v. United States, No. 92-4134 (GEB) slip op. at 5 (D.N.J. Jan. 10, 1994) (emphasis added).

refund claim to debtor); DiStasio v. United States, 22 Cl. Ct. 36, 52 (1990) (holding claim for refund abandoned only if scheduled); Weiner v. United States, 15 Cl. Ct. 43, 45 (1988) (retaining unscheduled tax refund claim as property of bankrupt estate); see generally 4 Collier on Bankruptcy ¶ 554.03 (15th ed. 1994). It is equally clear that since the bankrupt estate retains unscheduled assets, only the bankruptcy trustee has the authority to control them. 26 U.S.C. § 554(d) ("property . . . not abandoned under this section . . . remains property of the estate"). This authority includes the power to file an amended tax return. See 26 U.S.C. § 6012(b)(4) (requiring that fiduciary for estate file estate return); see also Mindlin v. Drexel Burnham Lambert Group, 160 B.R. 508, 514 (Bankr. S.D.N.Y. 1993) ("By operation of 11 U.S.C. § 554(c) and (d), any asset not scheduled pursuant to 11 U.S.C. § 521(1) remains property of the estate, and the debtor loses all rights to enforce it under his own name."). These propositions, however, beg the fundamental question raised by this dispute, viz. were the antitrust action and tax refund claim separate assets? If they were not, then the tax refund was scheduled as part and parcel of the antitrust claim, and it descended to Hutchins through abandonment. After reviewing the respective arguments, we conclude that during the pendency of the bankruptcy, the tax refund existed as an inherent part of the properly scheduled antitrust claim.

Initially, it bears noting that the tax refund in this case differs from the tax refunds that typically appear as unscheduled assets in bankruptcy proceedings. The standard case

of an unscheduled tax refund involves an expected refund computed by the debtor and entered on a personal or corporate tax return, which the debtor then fails to schedule after declaring bankruptcy. See, e.g., Mertz v. Rott, 955 F.2d 596 (8th Cir. 1992) (considering estate tax refund that debtors anticipated but failed to schedule); Doan v. Hudgins, 672 F.2d 831 (11th Cir. 1982) (considering debtor's failure to list expected tax refund); Barowsky v. Serelson, 102 B.R. 250 (Bankr. D. Wyo. 1989) (reopening bankruptcy after discovery of anticipated but unscheduled income tax refund). The scenario is even clearer when the refund has already been paid by the I.R.S. and yet goes unscheduled. See In re Maynard, 162 B.R. 349 (Bankr. M.D. Fla. 1993); In re Walton, 158 B.R. 943 (Bankr. N.D. Ohio 1993). In either case, the debtor knows of the existence of the asset, expects to receive it, and should have scheduled it.

The instant facts are different. Here, the tax refund was the result of action by the bankruptcy trustee, and the claimed discrepancy was not asserted until after the bankruptcy had closed. More importantly, there was no reason for the debtor or the trustee to assume, believe, or even guess that any refund existed. The taxes were paid on income from an antitrust settlement, so there had been no prior withholding. Assuming that the trustee computed the tax correctly, there would be no refund.[2]

---

[2] When this opinion characterizes the actions of the trustee as "correct", "incorrect", "erroneous" or the like, it does so in the abstract. The validity of the underlying refund is not before us, see discussion infra, and we express no opinion

These important factual distinctions indicate that at the time of the bankruptcy, the crucial asset, indeed the only asset, was the antitrust settlement. During the bankruptcy, no "tax refund" asset existed. It was at best an inchoate right. Creating the legal fiction that this asset arose at the time of the erroneous filing and existed independently, albeit covertly, would require every debtor to list as an additional asset a potential tax refund due to the possibly erroneous filings of the trustee. Alternatively, the debtor would have to supervise and double check the actions of the trustee, contrary to the intention of 11 U.S.C. § 704, which makes the bankruptcy trustee accountable for all property received. See In re R.E. Lee & Sons, Inc., 95 B.R. 316 (Bankr. M.D. Pa. 1989) (limiting debtor's burden to reasonable diligence in completing schedules). There seems little to recommend either course as an innovation in bankruptcy procedure.

Neither the district court nor the parties have cited any authority addressing the status of an undiscovered tax refund that arises post-petition as a result of the filings of the trustee. Our efforts have revealed no case on point. The extensive citations to cases on unscheduled assets are inapposite if the tax refund did not yet exist. Indeed, these cases would support Hutchins' claim since he properly scheduled the only

on the propriety of the trustee's actions. We use these terms in our discussion of standing because Hutchins' original tax refund depended on a filing error by the trustee. These characterizations have emerged as a necessary part of the case as framed by the parties, and the court adopts them as a convenience.

existing asset, the antitrust proceeds.  Despite the absence of authority, both parties offer arguments on the issue, and logic dictates the result.

First, we agree with Hutchins that "[i]t was not the appellant's right, position or responsibility to amend his schedules to reflect trustee's accounting and tax payment errors." Brief of Appellant at 16.  Hutchins appears to contend that, as suggested above, he had no reason to suspect the error and hence the existence of the refund.  We make explicit the necessary implication:  The tax refund was not a known asset at the time of the bankruptcy and so could not be scheduled separately pursuant to 11 U.S.C. § 521(1).

Further support flows from the concept of valuation. At the time of the bankruptcy, the principal asset for distribution to creditors was the income from the antitrust settlement. Creditors could reasonably assume that the estate would owe tax on this money, so the net value of the asset was the amount of the proceeds less the correct amount of tax. Alternatively, creditors could expect the net value to equal the amount of the proceeds less the amount of tax paid by the trustee plus the amount of any tax refund.  There is no need to take this latter course, which unnecessarily creates two assets from a single fund.  Instead, the antitrust cause of action cum tax refund can best be viewed as a single asset that was inadvertently misappraised by the bankruptcy trustee.  Assuming for the moment that Hutchins is correct on the merits of the tax refund, the trustee's failure to complete the tax return correctly

effectively undervalued the antitrust claim by approximately $37,000. This mistake was not discovered until after abandonment. It is well established in bankruptcy law that mistakes in valuation will not enable the trustee to recover an abandoned asset. In re McGowan, 95 B.R. 104 (Bankr. N.D. Iowa 1988) (ruling that abandonment of misvalued asset is irrevocable); Matter of Enriquez, 22 B.R. 934 (Bankr. Neb. 1982) (same).

We find these arguments persuasive. We are less impressed with the I.R.S.'s conclusory assertion that the antitrust cause of action was "clearly a separate asset" from the tax refund. Nor are we swayed by the agency's cursory comparison:

> The antitrust action involved damage claims against various of Hutchins's competitors. The Government was not a party to that action, and no federal income tax issues were involved. Here, in contrast, the Government is a party, the issue is one of taxation, and neither the competitors nor antitrust violations are of concern.

Brief of Appellee at 21. While an accurate description of the two causes of action as they currently stand, these distinctions ignore the fact that the relevant time period for scheduling is not the onset of subsequent litigation but rather the pendency of the bankruptcy. At that point, no separate tax refund asset existed, or to the extent that it did, it was subsumed in the original declaration of the value of the antitrust proceeds.

Our review of these arguments indicates that the tax refund was properly scheduled to the extent that it could be.

Hutchins scheduled the only asset of which he was aware, the antitrust claim. The tax refund arose later as a result of the actions of the trustee. Hutchins did not cause the trustee to file an erroneous tax return, and he had no reason to suspect its existence. Indeed, the discrepancy was not discovered until after the close of the bankruptcy. We hold that Hutchins acted properly in scheduling his assets.

**B.**

This resolution of the scheduling issue necessitates the conclusion that Hutchins had standing to sue for the tax refund. Since he properly scheduled the antitrust claim, the right to the refund descended to him through abandonment.

Hutchins scheduled the antitrust claim properly. On April 7, 1983, he filed in the U.S. Bankruptcy Court a Motion to File Amended Schedule B – Statement of All Property of Debtor. Page 6, line 17 of the amended Schedule B reflected "unliquidated antitrust claims." This filing scheduled the antitrust claim pursuant to 11 U.S.C. § 521(1). The tax claim was necessarily scheduled through this action.

Hutchins then received the right to this tax claim as an undifferentiated part of the antitrust claim he acquired through abandonment. On September 21, 1988, the trustee moved pursuant to 11 U.S.C. § 554(a) for an order "that any remaining property scheduled by the debtor(s) be abandoned to the debtor(s) and that any further interest in said property be disclaimed." On March 23, 1989, the Bankruptcy Court entered the requisite Abandonment Order.

Through the abandonment of the antitrust claim, Hutchins held the right to the potential tax refund on April 2, 1989, when he filed the amended tax return. As a result, he had standing to contest the I.R.S.'s decision regarding his refund. See 26 U.S.C. §§ 6402(a), 6511(a), 7422(a); 28 U.S.C. § 1346(a); see also Boryan v. United States, 690 F.Supp. 459, 463 (E.D. Va. 1988).

## C.

Although as a general rule an affirmative holding on standing is merely a precursor to consideration of the merits, in the instant case it disposes of the controversy. The I.R.S. cannot prevail as a matter of law because it took no position in the district court on the underlying validity of the refund. The I.R.S. chose to assert only the claim that the refund was paid to the wrong party, and this argument depended on Hutchins' lack of standing. Our contrary conclusion resolves the case. We decline to consider an insufficiently explored, fact-specific, non-dispositive theory that was not raised below.

On appeal, the I.R.S. attempts to argue for the first time that the underlying basis of Hutchins' claimed tax refund is incorrect because the discharge of debt by the antitrust defendants is not excludible income. Brief of Appellee at 13, 14, 28-33. This argument was not asserted at the trial level. The I.R.S.'s eleventh hour Reply Brief reference to an isolated footnote in the record supports rather than contradicts this conclusion. See Reply Brief of Appellee at 3.

14

Under the prudential policy recognized in Hormel v. Helvering, 312 U.S. 552, 556 (1941), we need not consider the I.R.S.'s new argument. See Patterson v. Cuyler, 729 F.2d 925 (3d Cir. 1984); Toyota Indus. Trucks U.S.A. Inc. v. Citizen Nat'l Bank, 611 F.2d 465, 470 (3d Cir. 1979); see also Singleton v. Wulff, 428 U.S. 106, 120 (1976). The reference discovered by the I.R.S. is remarkable only in its unobtrusiveness. A lone and diminutive footnote does not constitute the assertion of a legal theory, especially when the same theory merited seven pages in the I.R.S.'s appellate brief. See Brief of Appellee at 27–34. Had the issue truly been asserted at the trial level, these seven closely argued pages would not have been needed. More importantly, it is by no means clear that the I.R.S.'s newfound champion can carry the day. The argument ultimately turns on whether the $76,000 in claims against the bankrupt estate that was retired by the antitrust defendants represents "discharge of indebtedness" excludible under 26 U.S.C. § 108(a)(1) or instead taxable income for which the discharged debt is merely the "medium of payment." See United States v. Centennial Savings Bank F.S.B., 499 U.S. 573, 582 n.7 (1991). Further factual development would be required to resolve this issue and determine the extent of any resulting tax differential. An appellate tribunal is not the proper forum for this task. See Newark Morning Ledger v. United States, 539 F.2d 929, 932 (3d Cir. 1976).

Put simply, the I.R.S.'s contentions regarding the merits of the tax refund come too late. In the district court,

15

the I.R.S. based its counterclaim solely on standing, and only that issue is properly before us. Our contrary disposition of this point resolves the case.

**D.**

The district court invoked equitable estoppel <u>sua sponte</u> because its holding on standing left no bar to the I.R.S.'s recoupment of the tax credit, a sanction the court found overly severe. We are disturbed that estoppel would be applied by the district court without allowing the parties to voice their opposition to it. Our conclusion, however, renders this issue superfluous, and we need not reach it.

**IV. Conclusion**

Contrary to the holding of the district court, Hutchins had standing to sue as a matter of law. Because at the trial level the I.R.S. based its counterclaim solely on the absence of standing, we will reverse and remand with instructions to enter summary judgment in favor of Hutchins. In doing so, we note only that appellant must consider himself the fortunate beneficiary of the appellee's litigation strategy. Had the I.R.S. assiduously pressed the validity of the tax refund at the trial level, Hutchins could well have lost his $37,897 bird in the hand in an ill-conceived grasp at $650 in the bush.