**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

——————

No. 09-4254

——————

IN RE: THOMAS KANE

Thomas Kane,
              Appellant

——————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civil No. 08-cv-05633)
District Judge:  Honorable Freda L. Wolfson

——————

Submitted Under Third Circuit LAR 34.1(a)
November 16, 2010

——————

Before: BARRY, CHAGARES and VANASKIE, Circuit Judges

(Opinion Filed: December 21, 2010)

——————

Thomas Kane, Esq., *Pro se*
44 Magnolia Court
Lawrenceville, NJ 08648-0000

Shannon Kane, *Pro se*
14 Hazel Place
Lynbrook, NY 11563

——————

OPINION OF THE COURT

1

_____

BARRY, Circuit Judge

Thomas Kane appeals the judgment of the District Court affirming the Bankruptcy Court's decision not to apply judicial estoppel to the entirety of a proof of claim filed by his estranged wife in his bankruptcy proceeding, and its conclusion that Ms. Kane has standing to pursue equitable distribution as a post-petition claim in that proceeding. We will affirm.

## I. Background

Shannon and Thomas Kane were married in August of 2004. Two years later, Ms. Kane filed for divorce in Mercer County, New Jersey, and moved to New York. In September of 2007, she presented her husband with a written settlement proposal requesting, *inter alia*, equitable distribution, and informing him that she intended to file for bankruptcy. On September 20, 2007, she filed a Chapter 7 petition in the Eastern District of New York. Her filing disclosed her estrangement from Mr. Kane, and the pending divorce litigation:

1. Schedule A of her petition included details about the couple's house and specified that "Debtor and her husband are separated";

2. Schedule F of her petition listed Mr. Kane as an unsecured creditor, specifying "[p]ossible obligations arising out of matrimonial proceeding" with a stated amount of claim listed as "unknown";

3. Ms. Kane's "Statement of Financial Affairs" listed the couple's divorce proceeding by docket number, and indicated its status as "Pending."

App. at A111, A120, A128.

2

On November 8, 2007, the Trustee in Ms. Kane's bankruptcy proceeding reviewed her petition at a 341 Meeting, *see* 11 U.S.C. § 341, at which she was present with counsel. Mr. Kane also attended in his capacity as a creditor listed on her petition. He argued, as he argues now, that his wife's sworn averments were "false and misleading because [they] failed to disclose that she was simultaneously litigating her entitlement to alimony, equitable distribution, and attorney's fees in another court[.]" Appellant's Br. at 10.[1] Nevertheless, after extensive colloquy, the Trustee concluded: "For the record, I'm satisfied that the Debtor's disclosure was sufficient, that there are certain omissions that she might have made, they're negligible." *Id.* at A174. The Trustee also confirmed that a "distributive award is an asset of the Estate[.]" *Id.* at A176. Thereafter, on November 15, 2007, Ms. Kane filed an amended petition which disclosed a claim for alimony and a pending lawsuit that did not appear in her first petition. On November 20, 2007, the Trustee filed a "Trustee's Letter of Assets" with the Bankruptcy Court in New York, which in early 2008 granted Ms. Kane a discharge.

On April 8, 2008, Mr. Kane filed a Chapter 13 bankruptcy petition in the District of New Jersey, and his wife

---

[1] Among the various matters that Mr. Kane alleges that Ms. Kane failed to disclose, or misrepresented, are the following:

1. She "falsely responded" that "the value of any 'alimony, maintenance, support, and property settlements' in which she 'is or may be entitled . . .'" was "'0.00.'" Appellant's Reply Br. at 3 (citing Schedule B, Question 17 of the Chapter 7 petition, asking for "current value of debtor's interest in property without deducting any secured claim or exemption").
2. At Ms. Kane's 341 Meeting, "[w]ithout any further elaboration, she falsely responded[] 'No'" to the question whether she had "'any lawsuits, insurance claims pending where you may collect some money?'" *Id.*
3. Ms. Kane's amended bankruptcy petition "once again falsely" set forth the error alleged in number one, above. *Id.*

3

filed a proof of claim in the amount of $398,950.39. The Bankruptcy Court in New Jersey held a hearing on Mr. Kane's motion to expunge Ms. Kane's claim with prejudice because it was premised on claims that she failed to include in her own bankruptcy petition. The Court expunged her proof of claim without prejudice to her right to refile it. The Court concluded that such refiling would constitute a post-petition claim in Mr. Kane's bankruptcy action. And, the Court indicated that such a claim is dependent on the Mercer County Family Court entering an equitable distribution award in her favor, with that court responsible for determining its parameters. However, the Court ruled that Ms. Kane was judicially estopped from filing "claims for loans to debtor's sisters, debtor's premarital car loan, wedding expenses and lost social security benefits … to the extent that the matrimonial court determines such claims do not fall within the ambit of equitable distribution … as a result of her failure to disclose such claims in her bankruptcy proceeding." *Id.* at A36. The Court then vacated the automatic stay imposed under 11 U.S.C. § 362, permitting Ms. Kane to pursue equitable distribution in the state court.

The Bankruptcy Court's decision relied on two conclusions, affirmed by the District Court, that are the crux of Mr. Kane's arguments on appeal. First, the Court concluded that, pursuant to Section 541(a)(5) of the Bankruptcy Code, entitlement to equitable distribution "is not an asset of [a bankruptcy] estate[,]" and therefore Ms. Kane had "no obligation to list the equitable distribution right as an asset in her [petition's] Schedule B[.]" *Id.* at A33. The Court thus distinguished Ms. Kane's *pursuit* of equitable distribution in state court litigation, from *entitlement* to equitable distribution arising from an award entered on her behalf within 180 days of a bankruptcy filing, concluding that only the latter becomes property of a bankruptcy estate pursuant to 11 U.S.C. § 541(a)(5).

Second, the Bankruptcy Court concluded that because Ms. Kane's equitable distribution claim was sufficiently before

the Bankruptcy Court in New York, via her 341 Meeting, she was not estopped from pursuing it in her husband's proceeding. The Court noted that the transcript from Ms. Kane's 341 Meeting addressed equitable distribution and her divorce litigation, which she had "reference[d] . . . in [her] statement of financial affairs," and concluded that "no one can suggest to this Court that the Chapter 7 trustee was not aware of the right for an equitable distribution, that there was litigation out there in which Shannon Kane was seeking equitable distribution[, but that the] . . . trustee made a conscious decision not to pursue it[.]" *Id.* at A33-34.

Mr. Kane appealed the Bankruptcy Court's order to the District Court, and Ms. Kane cross-appealed. The District Court affirmed the Bankruptcy Court in all respects, and Mr. Kane now appeals.

## II. Jurisdiction and Standard of Review

The District Court's jurisdiction to consider an appeal from a final order of the Bankruptcy Court arises under 28 U.S.C. § 158(a)(1). We have jurisdiction under 28 U.S.C. §§ 158(d)(1) and 1291.

We employ "the same standard of review [that] the District Court employed in reviewing the Bankruptcy Court's decision. We review factual findings for clear error, and we exercise plenary review over any legal conclusions." *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 316 (3d Cir. 2003) (citation omitted). We review a district court's decision whether to invoke judicial estoppel "only for abuse of discretion, . . . [asking whether] its ruling is founded on an error of law or a misapplication of law to the facts." *Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 780 (3d Cir. 2001) (internal quotation marks and citations omitted). With respect to an issue of standing, our review is plenary. *Hutchins v. IRS*, 67 F.3d 40, 42 (3d Cir. 1995) (citation omitted). "We may affirm the rulings of the District

Court for any proper reason that appears on the record even where not relied on by it." *United States v. Perez*, 280 F.3d 318, 337 (3d Cir. 2002) (citation omitted).

## III.  Discussion

### A.  Introduction

The Bankruptcy Code requires that a debtor file necessary declarations adequately, honestly, and in good faith. *See, e.g.*, 11 U.S.C. § 521(a)(1) (defining a debtor's filing duties); Fed. R. Bankr. P. 9011(b) (outlining requirements of proper purpose and evidentiary support in representations to bankruptcy court).

In *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, we set forth the Code's disclosure requirements, and sought to place a party's "alleged prior inconsistent statement in context." 81 F.3d 355, 362 (3d Cir. 1996). Citing 11 U.S.C. §§ 521(1) and 1125(a)-(b), as well as applicable official disclosure forms, we proceeded to note:

> The Code imposes on debtors an affirmative duty of full disclosure. Section 521 requires the debtor to file with the court "a schedule of assets and liabilities . . . and a statement of the debtor's financial affairs." The schedule must disclose, *inter alia*, "contingent and unliquidated claims of every nature" and provide an estimated value for each one.
> . . .
> These disclosure requirements are crucial to the effective functioning of the federal bankruptcy system. Because creditors and the bankruptcy court rely heavily on the debtor's

6

> disclosure statement in determining whether to approve a proposed reorganization plan, the importance of full and honest disclosure cannot be overstated.

*Id.* (internal citations omitted).

As indicated above, a debtor's disclosure obligation extends to "contingent assets" such as causes of action pursued against another party, *Krystal Cadillac*, 337 F.3d at 321, because such disclosure "allows the trustee and the creditors to determine whether" to pursue these assets "on the creditors' behalf." *In re Costello*, 255 B.R. 110, 113 (Bankr. E.D.N.Y. 2000). While a bankruptcy case is pending, "it [i]s the trustee, and not [the debtor], who ha[s] the capacity to pursue [the debtor's] claims." *Id.* (citations omitted). Indeed, it would be inconsistent with the Bankruptcy Code to apply a rule requiring "the debtor . . . [to] have to supervise and double check the actions of the trustee, . . . [who is] accountable for all property received." *Hutchins*, 67 F.3d at 44 (citing *In re R.E. Lee & Sons, Inc.*, 95 B.R. 316 (Bankr. M.D. Pa. 1989) (limiting debtor's burden to reasonable diligence in completing schedules)).

The Bankruptcy Code defines the property of a bankruptcy estate as including, *inter alia*, (1) "all legal or equitable interests of the debtor in property as of the commencement of the case," 11 U.S.C. § 541(a)(1) (with certain exceptions, inapplicable here), and (2) "[a]ny interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date . . . as a result of a property settlement agreement with the debtor's spouse, or of an interlocutory or final divorce decree[.]" *Id.* § 541(a)(5)(B). Section 554 then provides:

> (a) After notice and a hearing, the

trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

. . .

(c)   Unless the court orders otherwise, any property scheduled under section 521(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.

(d)   Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate.

In light of the foregoing, we have emphasized that Section 541(a) "was intended to sweep broadly to include 'all kinds of property, including tangible or intangible property, [and] causes of action[,]'" *Westmoreland Human Opportunities, Inc. v. Walsh*, 246 F.3d 233, 241 (3d Cir. 2001) (quoting *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n.9 (1983)), and that "an asset must be properly scheduled in order to pass to the debtor through abandonment under 11 U.S.C. § 554." *Hutchins*, 67 F.3d at 43 (citing cases).

Mr. Kane correctly cites various of these obligations that the Bankruptcy Code and case law impose on debtors. However, his arguments that the District Court erred—(1) by refusing to apply judicial estoppel to the entirety of Ms. Kane's proof of claim, and (2) by concluding that she has standing to pursue equitable distribution—fail because he elides two other considerations that necessarily govern our decision. First, courts have discretion in applying the fact-specific, equitable remedy of judicial estoppel. Second, jurisdictional considerations caution us against, if not prevent us from, essentially second-guessing

8

the basis for a discharge in bankruptcy by a court not subject to our review.

Underlying Mr. Kane's appeal is his fundamental contention that Ms. Kane's Chapter 7 proceeding worked a fraud upon the three courts that have considered this matter and her creditors. That contention belonged, in the first instance, before the court responsible for overseeing her petition: the Bankruptcy Court in New York.[2] In any event, in light of the record that is before us, we conclude that the District Court, and before it the Bankruptcy Court in New Jersey, had ample reason to assume that Ms. Kane's disclosures, and Mr. Kane's own actions (as well as his opportunity to take additional action), fairly set forth before the Bankruptcy Court in New York what needed to be set forth. We address each of Mr. Kane's arguments in turn.

### B. Judicial Estoppel

Judicial estoppel is a fact-specific, equitable doctrine, applied at courts' discretion. Mr. Kane insufficiently accounts for this, and for the corollary that a given set of circumstances does not, as he suggests, necessarily compel its application. Accordingly, his judicial estoppel argument fails.

We summarized the doctrine of judicial estoppel, and applied it in a bankruptcy case, in *Krystal Cadillac*. Our summary bears quoting at some length:

---

[2] Given the facts that he alleges, one would assume that Mr. Kane would have formally objected to the Bankruptcy Court's granting of a discharge in Ms. Kane's proceeding, as he was permitted to do pursuant to 11 U.S.C. § 727(c)(1)-(2) (outlining parties' rights to object to the granting of a discharge). The record does not indicate whether Mr. Kane did so, though Ms. Kane's counsel at the hearing on the motion to expunge her proof of claim noted that "[i]f there's a question as to whether Ms. Kane was truthful or entirely truthful in the bankruptcy court in New York, there's still an open bankruptcy in New York within which to adjudicate that." App. at A30.

We first articulated the doctrine of judicial estoppel in *Scarano v. Central R. Co. of N.J.*. There, we . . . recognized the intrinsic ability of courts to dismiss an offending litigant's complaint without considering the merits of the underlying claims when such dismissal is necessary to prevent a litigant from playing fast and loose with the courts.

Since *Scarano*, we have consistently stated that the doctrine should only be applied to avoid a miscarriage of justice. Thus, in *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, we stated[ that t]he basic principle of judicial estoppel . . . is that absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory.

Judicial estoppel is therefore not intended to eliminate all inconsistencies no matter how slight or inadvertent they may be. In *Montrose Medical Group [Participating Savings Plan v. Bulger]*, we identified certain criteria for determining when seemingly inconsistent litigation stances justify application of the doctrine. We concluded:

> First, the party to be estopped must have

taken two positions that are *irreconcilably inconsistent*. Second, judicial estoppel is unwarranted unless the party *changed his or her position in bad faith*—i.e., with intent to play fast and loose with the court. Finally, a district court may not employ judicial estoppel unless it is tailored to address the harm identified and *no lesser sanction would adequately remedy the damage* done by the litigant's misconduct. We also noted that equity requires that the presiding court give the party to be estopped a meaningful opportunity to provide an explanation for its changed position.

*Krystal Cadillac*, 337 F.3d at 319-20 (emphasis in original; internal quotation marks, citations, and references omitted).

More generally, and citing various circuit court decisions, including our own in *Scarano*, the Supreme Court has described judicial estoppel as imposing not "inflexible prerequisites[,]" but rather as encompassing "[a]dditional considerations [that] may inform the doctrine's application in specific factual contexts." *New Hampshire v. Maine*, 532 U.S. 742, 751 (2001) (citations omitted). The Court observed that, "[b]ecause the rule is intended to prevent improper use of judicial machinery, judicial estoppel is an equitable doctrine invoked by a court at its discretion[.]" *Id.* at 749 (internal quotation marks and citations

11

omitted).  As we recently observed, "[t]he applicability *vel non* of judicial estoppel is fact-specific."  *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 253 n.6 (3d Cir. 2010) (citation omitted).[3]

The crux of Mr. Kane's judicial estoppel argument is that his wife's averments and omissions in her bankruptcy proceeding were inconsistent with (if not concealed) terms of a settlement proposal in the couple's divorce proceeding, and/or claims to equitable distribution that she began litigating against Mr. Kane approximately one year prior to the filing of her Chapter 7 petition.  These alleged misrepresentations and omissions, the argument goes, underlie her proof of claim filed in his bankruptcy proceeding.

However, irreconcilable inconsistency is but the first of three prongs in a judicial estoppel analysis, and all three must be satisfied before a court opts to apply the doctrine.  In *Ryan*, it was "undisputed" that the debtor had violated disclosure duties, but we declined to apply estoppel because the bad faith prong had not been satisfied.  81 F.3d at 362.  We also noted that we have "expressly left open [whether] … nondisclosure, standing alone, can support a finding [of irreconcilable inconsistency] … within the meaning of the judicial-estoppel doctrine."  *Id.* (citation omitted).  Here, in rejecting Mr. Kane's plea to apply estoppel, the District Court relied on the fact that the Bankruptcy Court in New Jersey both noted and deferred to the New York Trustee's finding that Ms. Kane's disclosures were "sufficient" and any omissions "negligible."  App. at A174.  This was not error.

To be sure, there would be no issue here if Ms. Kane's Chapter 7 petition had included the specific amount that she

_____

[3] While judicial estoppel is fact-specific, its application is not tribunal-specific.  *See, e.g.*, *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 419-20 (3d Cir. 1988) (applying judicial estoppel analysis to Chapter 11 debtor pursuing claims in non-bankruptcy forum).

sought in equitable distribution, rather than referencing her divorce litigation in various sections of the petition, and presumably relying on the extensive discussion of her claims at her 341 Meeting to fill in any gaps. However, her disclosures must be placed "in context." *See Ryan*, 81 F.3d at 362. That context is this: one bankruptcy court may well have examined her petition and concluded that her disclosures were insufficient because references to her marital status and pending divorce litigation on Schedules A and F and in the Statement of Financial Affairs did not excuse her from providing a specific, estimated value of equitable distribution sought on Schedule B. Or, another bankruptcy court might have concluded, as the Bankruptcy Court in New York apparently did, that her disclosures were sufficient because the Trustee, "who had the capacity to pursue her claims[,]" *see Costello*, 255 B.R. at 113, became aware of them in both fact and substance before he proclaimed them sufficient. *See Hutchins*, 67 F.3d at 44 (questioning propriety of requiring a debtor "to supervise and double check the actions of the trustee") (citing *Lee*, 95 B.R. at 318 (debtor's burden completing schedules is one of "reasonable diligence")).

Accordingly, for purposes of the fact-specific doctrine of judicial estoppel, we have no reason to conclude that the District Court erred in finding that Ms. Kane's proof of claim in her husband's bankruptcy proceeding was not irreconcilably inconsistent with her disclosures in her bankruptcy proceeding, or a bad faith change in position manifesting an intent to play fast and loose with the courts.[4] That the Bankruptcy Court

---

[4] There is no evidence that Ms. Kane effectively "limited the reference to . . . [her equitable distribution] claim *in order to conceal* the claim[] from creditors in the hope of retaining any recovery for [her]self." *See Krystal Cadillac*, 337 F.3d at 320 (emphasis added). That her petition disclosed divorce litigation, and was discussed at length at her 341 Meeting, also distinguishes this case from *Oneida*, where we noted Oneida's "failure to mention [its] potential claim either within the confines of its disclosure statement *or at any stage of the*

applied estoppel to claims that she had not referenced on her petition in any manner at all, reinforces this conclusion.[5]

## C. Standing

Mr. Kane next argues that the District Court erred when it reasoned that because equitable distribution was not part of his wife's bankruptcy estate, she has standing to pursue it as a basis of her proof of claim in his bankruptcy. Although we affirm the Court's conclusion, we do so for a somewhat different reason: Ms. Kane's equitable distribution claim was abandoned to her when the Bankruptcy Court in New York granted a discharge, and it is not for us to review that court's decision.

Here the threshold questions are (1) whether Ms. Kane's equitable distribution claim was a "legal or equitable interest" pursuant to Section 541(a)(1), and (2) whether the fact that her claim was not specifically scheduled by dollar amount on her petition's Schedule B—even though her divorce action was disclosed on her financial statement and equitable distribution was discussed at length at her 341 Meeting—means that the claim was never abandoned to her and, accordingly, deprives her of standing to pursue it in her husband's bankruptcy. We answer the first question in the affirmative, and the second in the

_bankruptcy court's resolution_." 848 F.2d at 419 (emphasis added). Rather, the circumstances here seem more akin to _In re Teleglobe Communications Corp._, where an inconsistency "look[ed] more like a legitimate disagreement … (mixed with a dose of sloppiness) than … a bad faith attempt to mislead the courts." 493 F.3d 345, 377 (3d Cir. 2007).

[5] Mr. Kane also argues that the District Court erred in holding that the informal disclosure of Ms. Kane's divorce claims to the Trustee "cured [her] omissions and misrepresentations … and defeated judicial estoppel." Appellant's Br. at 28. While we take a somewhat different route in reaching the District Court's ultimate conclusion as to judicial estoppel, we note that the Court carefully stated that it _was not_ holding that informal disclosure is sufficient. Nor, we note, do we.

negative.

"Analysis under § 541's property definition must begin by focusing directly on the specific interests claimed to constitute the debtor's property." *Westmoreland*, 246 F.3d at 242. The extent to which divorce claims are an asset of a bankruptcy estate turns on both the Bankruptcy Code and New Jersey law defining the equitable distribution of marital property. *See In re Berlingeri*, 246 B.R. 196, 199 (Bankr. D.N.J. 2000) (citing *Butner v. United States*, 440 U.S. 48, 55 (1979)).[6] Particularly pertinent here is our treatment of standing, as it relates to disclosure and scheduling of assets in bankruptcy, in *Hutchins v. IRS*, 67 F.3d at 40.

New Jersey law provides that, "in all actions where a judgment of divorce … is entered the court may make such award or awards to the parties … to effectuate an equitable distribution of [marital] property[.]" N.J.S.A. 2A:34-23(h). Accordingly, "the New Jersey Supreme Court has held that '[b]y the plain terms of the statute,' the right to equitable distribution of marital property arises upon entry of the judgment of divorce." *Berlingeri*, 246 B.R. at 199 (quoting *Carr v. Carr*, 576 A.2d 872, 875 (N.J. 1990)).

The upshot of this definition is that when Ms. Kane filed for bankruptcy, she had an *interest* in an equitable distribution of marital property—namely, by virtue of being married to Mr. Kane, and by virtue of having initiated a divorce action in which she was seeking equitable distribution—but she did not have a *right* to it. Her claim qualified as a contingent, equitable interest in (marital) property that could not ripen into a vested property interest—i.e., a tangible asset—until entry of a judgment of

---

[6] We recently have redefined "claim" most liberally for purposes of bankruptcy law, overruling a decision on which the District Court partially relied. *See In re Grossman's*, 607 F.3d 114, 121 (3d Cir. 2010), *overruling Avellino & Bienes v. M. Frenville Co.*, 744 F.2d 332 (3d Cir. 1984).

divorce.[7]  The District Court blurred this distinction, assuming that only the latter interest is at issue in the instant case, accordingly (and erroneously) concluding that Ms. Kane had no duty to disclose her equitable distribution claim because no divorce judgment had been entered.

Returning to Section 541(a)(1), Ms. Kane's bankruptcy estate included as an "equitable interest in property," the *possibility* that the Family Court would, at some point in the future, award her equitable distribution of marital assets, *or* that she and Mr. Kane would arrive at a property settlement that transferred the legal title of marital assets to her.  Ms. Kane disclosed such a contingency by disclosing the divorce action, listed by docket number and described as "pending," on her financial statement.  What is important for our purposes is whether this disclosure, together with the discussion of its ramifications for equitable distribution by a Trustee who found that it was sufficient and confirmed that equitable distribution is an asset of the estate—but where that cause of action was absent from Schedule B (i.e., it was both "disclosed" and "unscheduled")—means that the cause of action was never abandoned to Ms. Kane at the time of discharge.

Mr. Kane correctly notes that courts have held that where a debtor conceals an asset or fails to schedule it, the asset remains the property of the bankruptcy estate and, accordingly, the debtor can be found to lack standing to pursue its further disposition.  *See, e.g.*, *Vreugdenhill v. Navistar Int'l Transp. Corp.*, 950 F.2d 524 (8th Cir. 1991); *In re DiGeronimo*, 354 B.R. 625 (Bankr. E.D.N.Y. 2006); *Yates v. Yates*, 148 P.3d 304 (Colo. App. 2006).  However, none of these cases are on all fours with the precise situation before us, nor does any one take

---

[7] Herein lies the distinction between Section 541(a)(1), encompassing contingent property interests such as causes of action, and Section 541(a)(5), encompassing, e.g., a property settlement reached during a bankruptcy proceeding, which accordingly vests property in a debtor such that, if this occurs within 180 days of filing, it becomes part of the estate.

into account principles enunciated in *Hutchins*, which provides guidance for resolution of the "disclosed but unscheduled"—i.e., not concealed and, according to the Trustee, in fact "sufficient"—quandary here.

In *Hutchins*, the debtor instituted an antitrust suit and amended his bankruptcy petition to reflect the cause of action. After his discharge in bankruptcy, a dispute arose over an IRS tax refund discrepancy. The IRS argued that because Hutchins had not scheduled the refund in his bankruptcy petition, it was never abandoned to him but rather remained part of the bankruptcy estate, and Hutchins accordingly did not have standing to pursue it. We rejected that argument, concluding rather that Hutchins had standing to pursue the claim because the refund "existed during the bankruptcy as an integral part of the antitrust claim—or if separately as a still inchoate right—[such that ]the tax claim was properly scheduled through the scheduling of the antitrust action and descended to Hutchins through abandonment." *Hutchins*, 67 F.3d at 40, 42-43.

*Hutchins* obviously did not address the situation before us—a disclosed divorce action / unscheduled equitable distribution claim—but it helps us to resolve it. Distinguishing *Hutchins* from a "standard case" where a debtor does not schedule a tax refund to which he is legally entitled (and, thus, possesses a vested asset), we ascribed the nebulous character of Hutchins's putatively unscheduled asset—the tax refund—to "the result of action by the bankruptcy trustee[,]" who was responsible for filing the tax return (i.e., of the estate) from which the refund stemmed. *Id.* at 43. Thus, we observed,

> at the time of the bankruptcy, the crucial asset . . . was the antitrust settlement. During the bankruptcy, no "tax refund" asset existed. It was at best an inchoate right. Creating the legal fiction that this asset arose at the time of [an] erroneous filing

[by the trustee] and existed independently, albeit covertly, would require every debtor to list as an additional asset a potential tax refund due to the possibly erroneous filings of the trustee. Alternatively, the debtor would have to supervise and double check the actions of the trustee, contrary to the intention of 11 U.S.C. § 704, which makes the bankruptcy trustee accountable for all property received. *See In re R.E. Lee & Sons, Inc.*, 95 B.R. 316 (Bankr. M.D. Pa. 1989) (limiting debtor's burden to reasonable diligence in completing schedules). There seems little to recommend either course as an innovation in bankruptcy procedure.

*Hutchins*, 67 F.3d at 44.

The facts of *Hutchins* do not map precisely onto those here, but its logic does. "At the time of [Ms. Kane's] bankruptcy, the crucial asset" was not a vested right to marital property—e.g., in the form of a property settlement that pegged the value of assets that would come to her upon entry of a judgment of divorce—but rather was her (contingent) claim to equitable distribution, on the assumption that the marriage *in fact will end* in a judgment of divorce. *See id.* "[N]o '[equitable distribution]' asset existed" as a freestanding property right; rather "[i]t was at best an inchoate right." *See id.*[8] And the

---

[8] The fact that no property settlement had been stipulated to, and thus no *settlement* was part of Ms. Kane's bankruptcy estate, distinguishes this case from *Reid v. Reid*, 708 A.2d 74 (N.J. Super. App. Div. 1998), on which Mr. Kane relies in arguing that New Jersey law governing equitable distribution, in tandem

Trustee, who was "accountable for all property received[,]" *id.*—including the inchoate property interest that Ms. Kane had to equitable distribution—declared her disclosures concerning that property sufficient, acknowledged that the interest was an asset of the estate, filed an asset statement with the Bankruptcy Court, and presumably, the record not manifesting anything to the contrary, allowed her case to proceed to discharge.

The discharge in bankruptcy granted Ms. Kane by the Bankruptcy Court in New York is not subject to our appellate review. However, the record before us permits the conclusion that the Trustee abandoned Ms. Kane's equitable distribution interest to her, either having determined its relative "value and benefit" to the estate, or having considered it scheduled and not otherwise administering it prior to discharge. *See* 11 U.S.C. § 554(a) and (c). To say, in the face of the Trustee's acquiescence in light of all of the facts that were presented to him, that the interest was never abandoned to Ms. Kane because she failed to assign a dollar amount to the claim on Schedule B raises the specter that we have stated would be inconsistent with the Bankruptcy Code in letter, and intolerable in practice: "the debtor would have to supervise and double check the actions of the trustee, [even though] … the bankruptcy trustee [is] accountable for all property received … [and a] debtor's burden [is limited] to reasonable diligence in completing schedules[.]" *Hutchins*, 67 F.3d at 44 (internal citation omitted).

with bankruptcy law, directs the conclusion that his wife does not have standing to pursue equitable distribution.

We also note that in concurrent bankruptcy and divorce cases, courts have described spouses' interests in marital property subject to equitable distribution as "inchoate" because these *interests* do not become property *rights*—i.e., do not vest—until entry of a judgment of divorce. *See, e.g.*, *DiGeronimo*, 354 B.R. at 637 (citing cases). Although *DiGeronimo* addressed New York law, New Jersey law also states that a "right" to equitable distribution only arises upon entry of a judgment of divorce.

19

## IV. Conclusion

Having found that judicial estoppel is unwarranted in light of the totality of facts relevant to Ms. Kane's disclosures in bankruptcy, and that application of *Hutchins* to those same facts yields the conclusion that her equitable distribution claim was abandoned to her upon discharge and that, accordingly, she has standing to pursue equitable distribution according to the terms set forth in the Bankruptcy Court's order, we will affirm the judgment of the District Court.[9]

---

[9] We reject Mr. Kane's remaining arguments without further discussion.